**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DARRYL A. STITT, on behalf of himself and all others similarly situated,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>THE SAN FRANCISCO MUNICIPAL TRANSPORTATION AGENCY; CITY AND COUNTY OF SAN FRANCISCO; AND DOES 1-20,<br><br>　　　　　Defendants. | Case No.: 12-CV-03704 YGR<br><br>**ORDER DENYING DEFENDANT CITY AND COUNTY OF SAN FRANCISCO'S MOTION TO DISMISS** |

Plaintiff Darryl A. Stitt ("Plaintiff"), a former bus driver and train operator for Defendant San Francisco Municipal Transportation Agency ("SFMTA"), brings this collective and class action against, SFMTA and City and County of San Francisco ("the City"), alleging that he and others were required to start their runs at different locations and were not compensated for travel time between the start and end points of their runs.[1] In his Amended Complaint filed August 17, 2012 (Dkt No. 11), Plaintiff alleges three claims: (1) violation of minimum wage and overtime provisions of the Fair Labor Standards Act, 29 U.S.C. §§ 206, 207, and 216 (b); (2) violation of the minimum wage provisions of the California Labor Code sections 1194 and 1198, and California Industrial Wage Commission ("IWC") Wage Order 9-2001 ("Wage Order 9"); and (3) violation of the San Francisco Minimum Wage Ordinance, San Francisco Administrative Code section 12R ("SFMWO").

The City has filed a Motion to Dismiss the second and third claims alleged in the complaint on the grounds that those claims are insufficient as a matter of law. With respect to the claim under

---
[1] The City represents that SFMTA is a constituent department of the City.

Wage Order 9, the City argues that, as a charter city under Article XI of the California Constitution, it has the exclusive power to determine its employee's compensation, and therefore is exempt from Wage Order 9. As to the claim under the SFMWO, the City argues both that it is not an "employer" covered by the ordinance and that the claim is barred because it is subject to grievance arbitration under the memorandum of understanding between Plaintiff's union and the City.

Having carefully considered the papers submitted, the pleadings in this action, and the oral arguments of counsel for each side, and for the reasons set forth below, the Court hereby **DENIES** the City's motion to dismiss Plaintiff's second and third claims.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1199-1200 (9th Cir. 2003). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). All allegations of material fact are taken as true and construed in the light most favorable to the plaintiff. *Johnson v. Lucent Techs., Inc.,* 653 F.3d 1000, 1010 (9th Cir. 2011). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## DISCUSSION

### I. REQUESTS FOR JUDICIAL NOTICE

The City has submitted for judicial notice three items in connection with its motion to dismiss: (1) the Charter of the City and County of San Francisco; (2) the SFMWO; and (3) San Francisco Ordinance No. 0135-12, which adopts and implements the Memorandum of Understanding ("MOU") between the Defendant and Plaintiff's Union, the Transport Workers Union of America, AFL-CIO, Local 250-A. (*See* Defendant City and County of San Francisco's Request for Judicial Notice in Support of Motion to Dismiss ["Def.'s RJN"], Dkt. No. 14, Exh. D.) In connection with his opposition, Plaintiff submits a request for judicial notice of Wage Order 9 and the Voter Information Pamphlet for the November 4, 2003 Consolidated Municipal Election. (*See*

Plaintiff's Request for Judicial Notice in Opposition to Defendant's Motion to Dismiss ["Pl.'s RJN"], Dkt. No. 16.)

Plaintiff opposes Defendant's Request for Judicial Notice and moves to strike portions thereof, specifically the MOU. (*See* Plaintiff's Opposition to Defendant's Request for Judicial Notice and Motion to Strike Defendant's Exhibit D, Dkt. No. 17.) Plaintiff argues that the MOU is not properly the subject of judicial notice because its validity and enforceability are presently in dispute. In particular, Plaintiff argues that: (i) the arbitration procedure that produced the MOU violates 49 U.S.C. § 5333(b); (ii) the union never agreed to submit to the arbitration that produced the MOU; and (iii) the Defendant must show that the arbitrator had the right to impose the MOU, including the arbitration procedures now contained in the MOU. Plaintiff contends that if the Court chooses to consider the MOU over these objections, it must convert the motion to dismiss to a motion for summary judgment and allow the Plaintiff an opportunity to present additional evidence. *See* Fed. R. Civ. Pro. 12(d); *Rosales v. United States*, 824 F.2d 799, 802 (9th Cir. 1987).

As a general rule on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court may not consider matters outside the complaint. *See Hal Roach Studios, Inc. v. Richard Feiner & Co.,* 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990); *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994) (overruled on other grounds in *Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1125 (9th Cir. 2002)). However, there are two exceptions to the general rule. First, a court may consider documents referenced in the complaint, "central" to the claims, and as to which no party questions the authenticity of the copies provided. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005); *Branch,* 14 F.3d at 454. Second, under Federal Rule of Evidence 201, a court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment. *Mack v. South Bay Beer Distrib.,* 798 F.2d 1279, 1282 (9th Cir. 1986), *overruled on other grounds by Astoria Fed. Sav. & Loan Assoc. v. Solimino,* 501 U.S. 104 (1991). For example, a court may take judicial notice of laws, regulations, and rules such as city ordinances because they are matters of public record. *See Santa Monica Food Not Bombs v. City of Santa Monica*, 450 F.3d 1022, 1025 n. 2 (9th Cir. 2006). However, a court may not take judicial notice of any disputed facts stated within such public records. *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001).

The Ninth Circuit has indicated that judicial notice should only be taken sparingly, with caution, and after demonstration of a "high degree of indisputability." *See, e.g., Rivera v Philip Morris, Inc.*, 395 F.3d 1142, 1151 (9th Cir. 2005). Further, a court should only take judicial notice of those facts in the documents that are both undisputed and *relevant* to the issues presented in the motion to dismiss. *See Santa Monica Food Not Bombs*, 450 F.3d at 1025 n.2 (declining to take judicial notice of documents where they were not relevant to the resolution of the matter); *Flick v. Liberty Mut. Fire Ins. Co.,* 205 F.3d 386, 392 n. 7 (9th Cir. 2000) (same); *Ruiz v. City of Santa Maria,* 160 F.3d 543, 548 n. 13 (9th Cir. 1998) (same). Any ambiguity in the documents must be resolved in favor of Plaintiffs at this stage in the proceedings. *See International Audiotext Network, Inc. v. AT & T Co.,* 62 F.3d 69, 72 (2nd Cir. 1995); *Hearn v. R.J. Reynolds Tobacco Co.* 279 F. Supp. 2d 1096, 1102 (D. Ariz. 2003).

Here, judicial notice of Wage Order 9, the SFMWO, and the San Francisco charter is appropriate as these documents are matters of public record. The voter pamphlet and the MOU present slightly more difficult questions.

The MOU was adopted and codified in a municipal ordinance. That ordinance is a proper subject of judicial notice. However, judicial notice of the existence of the MOU does not resolve the issues of its validity and enforceability. Such factual issues that cannot be resolved on a motion to dismiss, and will not be presumed. Judicial notice of the MOU is therefore **GRANTED** only as to the existence of the ordinance that enacted it. To the extent that the terms of the MOU, including their validity and enforceability, must be determined in order to decide issues presented in this action, they cannot be considered in connection with the 12(b)(6) motion before the Court at this time.[2]

With respect to the voter pamphlet offered by Plaintiff, such voter information has been held to be the proper subject of judicial notice under similar circumstances. *See Edelstein v. City and County of San Francisco*, 29 Cal.4th 164, 171 n.3 (2002) (judicial notice of San Francisco voter information pamphlet regarding proposition under challenge before the court); *People v. Snyder*, 22 Cal.4th 304, 309 n.5 (2000) (taking judicial notice of ballot arguments regarding statewide proposition as legislative history and aid for interpretation). The Court further notes that Defendant

---

[2] The Court declines to convert this motion into a motion for summary judgment.

does not object to judicial notice of this document. Thus, the Court **GRANTS** judicial notice of the voter pamphlet to the extent that it is relevant to any issues herein.

## II. VIOLATION OF STATE LABOR CODE AND WAGE ORDER 9

In his second claim for relief, Plaintiff alleges that the City failed to pay wages for travel time in violation of the minimum wage provisions of Wage Order 9. The IWC regulates wages statewide in California through industry-specific wage orders. Wage Order 9 regulates workplace conditions within the transportation industry, and establishes a minimum wage for all hours worked: "[e]very employer shall pay to each employee wages . . . not less than eight dollars ($8.00) per hour for all hours worked." *See* 8 Cal. Code Regs. § 11090, subd. 4. Certain provisions of Wage Order 9 do not apply to public entities by its own terms. *Id.* at subd. 1 ("[e]xcept as provided in Sections 1, 2, 4, 10, and 20, and with regard to commercial drivers, Sections 11 and 12, the provisions of [Wage Order 9] shall not apply to any employees directly employed by the State or any political subdivision thereof, including any city, county, or special district.") However, Wage Order 9 does not exempt public entities from Section 4's obligation to pay the state minimum wage for all time worked.[3]

The City argues that, under California's "home rule" doctrine in Article XI, section 5 of the California Constitution, *charter* cities may make and enforce ordinances and regulations with respect to municipal affairs, and such local laws displace state laws of general applicability as far as those municipal affairs are concerned. The City argues that as a charter city and county, it has plenary power to determine the compensation of its own employees and is exempt from state statutes and regulations, including Wage Order 9, insofar as they concern compensation of municipal employees. Thus, the City argues that Wage Order 9 is inapplicable to it as a charter city and county.

Plaintiff counters that the City has not shown under the applicable legal standards that its home rule autonomy supersedes statewide minimum wage regulations, including Wage Order 9. Plaintiff argues that the City's home rule authority is limited to regulation of its own municipal affairs, and that the minimum wage provisions contained in Wage Order 9 are a matter of statewide concern and are therefore not superseded by the municipal enactments of the City.

---

[3] Indeed, specific provisions of Wage Order 9 are addressed expressly to "public transit bus drivers" employed by governmental entities. *See* 8 Cal. Code Regs. § 11090, subds. 2(L), 11(F), 12(C).

Charter cities are explicitly authorized to govern themselves, free from intrusion from the state legislature, regarding matters deemed municipal affairs. Charter cities "may make and enforce all ordinances and regulations in respect to municipal affairs, subject only to restrictions and limitations provided in their several charters and in respect to other matters they shall be subject to general laws." CAL. CONST. Art. 11, § 5(a). "City charters adopted pursuant to this Constitution shall . . . with respect to municipal affairs . . . supersede all laws inconsistent therewith." *Id.*

The California Supreme Court recently reiterated the four-part analytical framework for resolving whether a matter falls within the home rule authority of a charter city:

> First, a court must determine whether the city ordinance at issue regulates an activity that can be characterized as a "municipal affair." Second, the court must satisfy itself that the case presents an actual conflict between [local and state law]. Third, the court must decide whether the state law addresses a matter of "statewide concern." Finally, the court must determine whether the law is "reasonably related to . . . resolution" of that concern and "narrowly tailored" to avoid unnecessary interference in local governance.

*State Bldg. and Const. Trades Council of Cal., AFL-CIO v. City of Vista*, 54 Cal.4th 547, 556 (2012) (internal quotations and citations omitted) [hereinafter "*Building Trades*"] (citing *Cal. Fed. Sav. & Loan Ass'n v. City of Los Angeles*, 54 Cal.3d 1, 16-17, 24 (1991)). "If, [however,] the court is persuaded that the subject of the state statute is one of statewide concern and that the statute is reasonably related to its resolution [and not unduly broad in its sweep], then the conflicting charter city measure ceases to be a 'municipal affair' pro tanto and the Legislature is not prohibited by article XI, section 5(a), from addressing the statewide dimension by its own tailored enactments." *Id.* (quoting *Cal. Fed. Sav. & Loan Ass'n*, 54 Cal. 3d at 17.) Thus, in order for the City to prevail on its argument that its home rule authority supersedes state law, and particularly Wage Order 9, the Court examine each of these four parts in turn.

**A. Part One: Compensation of City Employees is a Municipal Affair**

Although the California Constitution grants charter cities the ability to regulate their own municipal affairs, the California Constitution does not provide a definition of what constitutes a municipal affair. As a result, "courts must decide, under the facts of each case, whether the subject

matter under discussion is of municipal or statewide concern." *County of Riverside v. Superior Court*, 30 Cal.4th 278, 292 (2003) (internal quotations omitted).[4]

The California Supreme Court has held that the home rule provisions in Article XI, section 5, vest charter cities with the authority to determine the compensation of their own employees and contract workers working on municipal projects. *See City of Pasadena v. Charleville*, 215 Cal. 384 (1932); *see also Building Trades*, 54 Cal.4th at 562-564. Not all matters connected with public employment in a chartered city are exclusively municipal affairs in which the state has no concern. *See Professional Fire Fighters, Inc. v. City of Los Angeles*, 60 Cal.2d 276, 291, 295 (1963) (collecting cases; holding that state statutes guaranteeing right to bargain collectively apply to charter cities). However, it is well established that the "salaries of local employees of a charter city constitute municipal affairs." *Building Trades,* 54 Cal.4th at 557 ("the salaries of charter city employees are a municipal affair and not a statewide concern"); *County of Riverside,* 30 Cal.4th at 287-88 (setting of salaries of municipal workers is a local concern though setting procedure for doing so may properly be controlled by statewide enactment); *Sonoma Cnty. Org. of Pub.Employees v. Cnty. of Sonoma*, 23 Cal.3d 296, 317 (1979) (invalidating a state law preventing charter cities and counties from granting cost-of-living salary increases to municipal employees in excess of those granted to state employees) ["*SCOPE*"].[5]

Based upon the foregoing, the Court determines that the compensation of Plaintiff and other SFMTA employees qualifies as a "municipal affair." However, this determination does not end the Court's inquiry as to whether there is a local enactment that supersedes state minimum wage law as set forth in Labor Code § 1194 and Wage Order 9.

---

[4] To the extent that determination of any of the factors requires the Court to consider whether "under the facts of each case" the test is met, as stated in *County of Riverside*, 30 Cal.4th at 292, such a factual determination would not be appropriate in the context of a 12(b)(6) motion.

[5] The decision in *SCOPE* suggested that, in matters of compensation of public employees, general state law was always preempted, regardless of the existence of a conflict between state and local law. *SCOPE,* 23 Cal.3d at 317. However, the California Supreme Court's more recent pronouncements in *Building Trades* extend the long line of California precedent requiring that a conflict be demonstrated before a court must determine which law prevails. *Building Trades*, 54 Cal.4th at 556.

**B.       Part Two: Conflict between State and Municipal Law**

The California Supreme Court has emphasized the importance of determining whether a state law actually conflicts with local law before proceeding to the difficult state constitutional question of which law governs a particular matter.  *See Cal. Fed. Sav. & Loan Ass'n,,* 54 Cal.3d at 16-17; *Building Trades*, 54 Cal. 4th at 559 (reiterating *Cal. Fed.*'s holding that court must first determine whether "state law actually conflicts with local law before proceeding to the difficult state constitutional question of which law governs a particular matter").  "To the extent difficult choices between competing claims of municipal and state governments can be forestalled in this sensitive area of constitutional law, they ought to be; courts can avoid making such unnecessary choices by carefully insuring that the purported conflict is in fact a genuine one, unresolvable short of choosing between one enactment and the other." *Cal. Fed. Sav. & Loan Ass'n,* 54 Cal.3d at 16-17.  Where a charter city does not demonstrate actual conflict, home rule autonomy does not supersede the obligation to comply with the provisions of state law.  *See Howard Contracting, Inc. v. G.A. MacDonald Construction Co.*, 71 Cal. App. 4th 38, 51 (1998).

Furthermore, the direct conflict must exist between the charter provision or municipal enactment and the state law.  *Id.*  Generally, contractual provisions in agreements with charter cities are not sufficient to meet this requirement.  *Id.*  However, a validly enacted MOU that *expressly covers* the subject matter at issue is sufficient to invoke home rule authority.  *See Dimon v. County of Los Angeles*, 166 Cal. App. 4th 1276, 1280, 1284 (2008) (emphasis supplied).

The City relies on *Dimon* and *Curcini* for its argument that the IWC Wage Orders are inapplicable to charter entities.  *Dimon*, 166 Cal. App. 4th at 1290 (2008) (holding that provisions of an IWC wage order provision requiring meal periods did not apply to charter county employees); *Curcini v. County of Alameda*, 164 Cal.App.4th 629, 643 (2008) (holding that Labor Code provisions regarding overtime pay are inapplicable to charter counties).  In *Dimon*, a probation officer sued the County of Los Angeles ("the County") alleging that the Labor Code and applicable IWC Wage Orders required charter counties to provide meal periods for their employees, or provide overtime compensation if they failed to do so.  *Dimon*, 166 Cal. App. 4th at 1290.  The County had entered into a collective bargaining agreement with probation officers that expressly covered meal breaks and provided for different terms.  Noting that the California Constitution gave exclusive power to

determine the compensation and working conditions of its own employees to charter counties, the *Dimon* court determined that the meal break provisions of the Labor Code and the IWC Wage Orders were inapplicable against the County because it had chosen to regulate meal periods itself in the collective bargaining agreement. *Id.* at 1281-84. The Court held that the IWC could not impose wage conditions on charter entities that were beyond the power of the Legislature to impose. *Id.* at 1290.

Similarly, the court in *Curcini* held that Labor Code section 1194 was inapplicable to charter entities in the context of overtime pay. *Curcini v. County of Alameda*, 164 Cal.App.4th at 643 ("We . . . conclude that Labor Code sections 510 and 1194 relating to overtime pay address matters of 'compensation' within the County's exclusive constitutional purview"). However, the court in *Curcini* did not have an occasion to consider whether home rule authority would supersede minimum wage requirements under Labor Code section 1194, as local regulations required the County of Alameda to pay at least straight-time wages for all time worked. *See id.* at 647.

Based on the record herein, the Court cannot find a conflict between the minimum wage provisions of the industry wage order and the city charter or local ordinance that would require application of the home rule doctrine. Moreover, while the California Supreme Court in the *Building Trades* case held that state prevailing wage laws do not apply to city employees, it specifically left open the question of whether state minimum wage laws of broad general application could also be superseded by a local enactment that conflicted. *See Building Trades,* 54 Cal.4th at 564 ("the state law at issue is not a minimum wage law of broad general application; rather, the law at issue here has a far narrower application").

As stated above, the validity and enforceability of the MOU are not properly before the Court at this time, precluding any determination that the terms of the MOU are in conflict with state law. Moreover, the City stated during the October 9, 2012 hearing that there was no actual conflict with state law. In the absence of such a conflict, and consistent with the teachings of the California Supreme Court on this matter of California Constitutional authority, the Court does not reach the

question of whether state law is superseded by the local law of the City. The City's motion to dismiss Plaintiff's Wage Order 9 claim on these grounds is therefore **DENIED**.[6]

### IV. VIOLATION OF SAN FRANCISCO MINIMUM WAGE ORDINANCE

The City moves to dismiss Plaintiff's third claim on the grounds that the City is not an "employer" within the meaning of SFMWO and thus has no obligations thereunder. Alternatively, the City argues that Plaintiff's third claim is barred because the operative MOU between the City and Plaintiff's union, Transport Workers Union Local 250-A, requires Plaintiff to arbitrate any disputes that fall within its terms.

#### A. Definition of "Employer" for Purposes of the SFMWO

The SFMWO states that "Employers shall pay Employees no less than the Minimum Wage for each hour worked within the geographic boundaries of the City." S.F. Admin. Code § 12R.4. The SFMWO includes an enforcement provision allowing "any person aggrieved by a violation of this Chapter, any entity a member of which is aggrieved by a violation of this Chapter, or any other person or entity acting on behalf of the public . . . [to] bring a civil action . . . against the Employer or other person violating this Chapter . . ." *Id.* at § 12R.7(c).

The City argues that the plain language of the SFMWO does not include the City in the definition of "Employer." In the definitions section of the SFMWO, the term "City" is defined as "the City and County of San Francisco." *Id.* at § 12R.3. "Employer" is defined as "any person, as defined in Section 18 of the California Labor Code, including corporate officers or executives, who directly or indirectly or through an agent any other person . . . employs or exercises control over the wages, hours or working conditions of any Employee." *Id.* at § 12R.3. Looking to the incorporated Section 18 of the Labor Code, a "person" is there defined as "any person, association, organization, partnership, business trust, limited liability company, or corporation." Cal. Labor Code § 18. Neither the SFMWO definition nor Labor Code section 18 specifically includes or excludes the City or other municipal entity.

---

[6] Because Defendant has not established the second part of the analysis, *i.e.* conflict between state and local laws, the Court does not reach the third and fourth steps, whether the minimum wage provisions of Wage Order 9 are a matter of "statewide" concern, and whether they are narrowly tailored to the resolution of that concern.

Federal courts interpreting a state law look to the state's rules of statutory interpretation and attempt to determine what meaning the state's highest court would give it. *Bass v. County of Butte,* 458 F.3d 978, 981 (9th Cir. 2006). Under California Supreme Court precedent, courts "start with the statute's words, assigning them their usual and ordinary meanings, and construing them in context." *Martinez* v. *Combs,* 49 Cal. 4th 35, 51 (2010); *see also Wells v. One2One Learning Foundation*, 39 Cal.4th 1164, 1190-93 (2006) (interpreting the meaning of the word "person" in a legislative enactment). "If the words themselves are not ambiguous, [courts] presume the Legislature meant what it said, and the statute's plain meaning governs." *Martinez,* 49 Cal.4th at 51. However, where the language is ambiguous, the court may "turn to extrinsic aids to assist in interpretation," including legislative history, public policy, contemporaneous construction by administrative agencies, and the overall statutory scheme. *Murphy v. Kenneth Cole Productions, Inc.*, 40 Cal. 4th 1094, 1103, 1105 (2007). If the meaning of the language is still unclear, courts may also apply maxims of statutory construction. *Wells,* 39 Cal.4th at 1190. The California Supreme Court has also counseled that "statutes governing conditions of employment are to be construed broadly in favor of protecting employees." *Murphy*, 40 Cal. 4th at 1103 (citing numerous cases).

Because the California Legislature has delegated to the IWC broad authority over wages, hours and working conditions, the IWC's interpretation of Labor Code provisions is entitled to deference. *See Martinez,* 49 Cal.4th at 61, 64. Like the SFMWO, Wage Orders issued by IWC rely on the term "employer" set forth in Labor Code § 18. *See, e.g.*, Cal. Code Regs. tit. 8, § 11090, subd. 1-2. Notably, the IWC in those Wage Orders presumes that public entities are covered by the definition of "employer" unless specifically exempted. *Sheppard v. North Orange County Regional Occupational Program*, 191 Cal.App.4th 289, 300-01 (2010).

Here, the SFMWO incorporated the definition of "person" in Section 18 of the Labor Code, language which the IWC has interpreted as including public entities. *Sheppard,* 191 Cal.App.4th at 300-01. The language itself is ambiguous. The information provided to the voters who approved the ordinance by election stated that:

> Proposition L is an ordinance that *would require most employers* (whether or not the employer receives City contracts) to pay a minimum wage of $8.50 per hour for work performed within San Francisco. Each year the City would adjust the amount of the minimum wage based on increases in the regional consumer price

> index. The minimum wage requirement would apply to employees who work two or more hours per week. The requirement *would apply to most employers*. The requirement would not apply to small businesses with fewer than ten employees (including temporary and part-time employees) or nonprofits until January 1, 2005.

(Pl.'s RJN, Exh. 2 ["Voter Information Pamphlet for the November 4, 2003 Consolidated Municipal Election"] at 161.) Furthermore, Section 10 of the SFMWO also expressly states that the ordinance applies to the City's Welfare-to-Work programs. (*See* S.F. Admin. Code § 12R.10 and Pl's RJN, Exh. 2 [Vote Pamphlet] at 171.) With respect to that provision, the Voter Information Pamphlet included the following statement by the City Controller:

> [t]he city currently pays welfare clients who perform work for City agencies, some at less than $8.50 per hour. Under this minimum wage, the City would need to pay approximately $200,000 more per year to maintain the required level of work for some clients.

(Pl.'s RJN, Exh. 2, at 161.) The Voter Pamphlet provides that the ordinance excludes only non-profits and small businesses, and only for a limited time period (until January 1, 2005). (*Id.* at 161, 169.) The Voter Pamphlet supports the notion that those who enacted the SFMWO understood that the City would be considered an employer covered by its provisions.

Relying on *Wells*, Defendant argues that because the SFMWO specifically mentioned the City elsewhere, the lack of a specific mention in the "Employer" definition "weighs heavily against a conclusion that [the ordinance] intended to include" the City in that definition. *Wells*, 39 Cal.4th at 1190. In *Wells*, the California Supreme Court considered whether public school districts were "persons" subject to suit under the California False Claims Act. *Wells,* 39 Cal.4th at 1179. Examining the language of the statute there, it concluded that the definition – "any natural person, corporation, firm, association, organization, partnership, limited liability company, business, or trust" – included only words "most commonly associated with private individuals and entities." *Id.* at 1190.[7] Because the language was ambiguous, the court looked to extrinsic aids to determine its

---

[7] Analogizing to other statutes, the *Wells* court cited similar instances where a statute separated the concept of "persons" from public entities. In a footnote regarding other statutes it regarded as similar, the *Wells* court stated, without further analysis or citation that Labor Code § 18 was among those statutes that, because it did not expressly include public entities, was meant to exclude them. *See Wells*, 39 Cal.4th 1164, 1191 n.14. While this Court surely must give weight to the opinions of California's highest court, given the context and paucity of other authority, the Court reads this statement as *dicta*. *Cf. Sheppard,* 191 Cal.App.4th

12

meaning. Ultimately, those extrinsic aids, rather than either of the competing maxims of construction examined by the court, led to the conclusion that school districts were excluded from the definition of "person" for purposes of liability under the statute.

Here, while the City is not specifically included in the definition of "Employer," and is mentioned elsewhere in the ordinance, other extrinsic aids suggest that the definition may include the City. The Court need not finally decide the question without further development of the record. Based upon the indicia of voter intent in the Voter Pamphlet, as well as the meaning of definition of "person" in the incorporated Section 18 of the California Labor Code, as understood by the IWC, the record as it currently stands does not support a determination that the SFMWO was meant to exclude the City from the definition of "Employer." The motion to dismiss on these grounds is therefore **DENIED**.

### B. Claim Subject to Arbitration

The City argues that Plaintiff is barred from presenting a claim under the Minimum Wage Ordinance because of the arbitration provision contained in the MOU. The City contends that a labor agreement's arbitration provision broadly precludes any claim that is substantially dependent on the analysis of the terms of the labor agreement. Plaintiff makes two arguments in opposition: (1) the validity of the agreement is in dispute and should not be presumed at this stage; and (2) even if valid, broad arbitration provisions cannot waive the right to bring statutory employment claim that does not require interpretation of a labor agreement.

First, as stated above, the validity and enforceability of the MOU presents factual issues that cannot be resolved on a motion to dismiss. It follows that any determination that Plaintiff is required to arbitrate his claims would necessarily require the Court to determine as a preliminary matter that the MOU is valid and enforceable.

Furthermore, even if the MOU is valid and enforceable, the nature of the claim here does not appear require interpretation of its terms. State law contract and tort actions arising out of collective bargaining agreements are generally preempted by section 301 of the Labor Management Relations Act and are required to be submitted to arbitration. *See Allis-Chalmers Corp. v. Lueck*, 471 U.S.

---

at 300-01 (concluding that maxims of construction could not override positive indicia of contrary legislative intent to cover public employees for purposes of minimum wage claim in Wage Order 4.)

202, 220 (1985) (holding state law claims are preempted when "substantially dependent upon analysis of the terms of an agreement.") However, claims based upon non-waivable statutory rights that do not require analysis of the terms of a collective bargaining agreement are not subject to preemption and mandatory arbitration. *See Zavala v. Scott Brothers Dairy, Inc.*, 143 Cal. App. 4th 585, 592 (2006) ("this lawsuit represents an effort to enforce non-waivable statutory rights, not an attempt to enforce compliance with the [collective bargaining agreement]" in lawsuit over non-compliant wage statements); *cf. Levy v. Skywalker Sound*, 108 Cal. App. 4th 753, 768-770 (2003) (holding that state action to enforce California Labor Code provisions was preempted by federal law because it would require analysis of the terms of the collective bargaining agreement). The City does not demonstrate that the SFMWO claim here would even require interpretation of the MOU such that the claim must be considered preempted and dismissed.

As a result, the City's motion to dismiss is **DENIED** with respect to Plaintiff's Minimum Wage Ordinance claim.

## CONCLUSION

As stated above, the City's Motion to Dismiss the second and third claims in the Amended Complaint is **DENIED**. The City shall file and serve its answer to the Amended Complaint no later than **February 6, 2013.**

This order terminates Docket No. 13.

**IT IS SO ORDERED**.

**January 8, 2013**

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**