THE TIDRICK LAW FIRM
STEVEN G. TIDRICK, SBN 224760
JOEL B. YOUNG, SBN 236662
2039 Shattuck Avenue, Suite 308
Berkeley, California  94704
Telephone:  (510) 788-5100
Facsimile:  (510) 291-3226
E-mail:      sgt@tidricklaw.com
E-mail:      jby@tidricklaw.com

Attorneys for Individual and Representative
Plaintiffs DARRYL A. STITT, TONY
GRANDBERRY, and HEDY GRIFFIN

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARRYL A. STITT, TONY GRANDBERRY, and HEDY GRIFFIN, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE SAN FRANCISCO MUNICIPAL TRANSPORTATION AGENCY; CITY AND COUNTY OF SAN FRANCISCO; and DOES 1-20<br><br>Defendants. | Civil Case Number: C-12-03704-YGR<br><br>**DECLARATION OF DR. RICHARD DROGIN, Ph.D.** |

I, RICHARD DROGIN, hereby declare:

The facts set forth herein are personally known to me or they are facts that I have been made aware of that experts in my field reasonably rely upon in forming opinions on the subjects herein.  If called as a witness, I could and would competently testify thereto.

**Introduction**

1.      I hold a Ph.D. in statistics from the University of California at Berkeley, earned in 1970.  I am currently an Emeritus Professor in the Department of Statistics at California State University, Hayward, where I have taught graduate and undergraduate courses in data analysis, non-parametric methods, regression analysis, sample surveys, probability theory,

1

**DECLARATION OF DR. RICHARD DROGIN, Ph.D.**

queuing theory, simulation methods and design of statistical software.  I have been employed at California State University, Hayward, since 1973, and became an Emeritus Professor in 1996.

2.      I am a partner in the statistical consulting firm of Drogin, Kakigi & Associates. This firm provides consulting services and computerized database management.  We have experience in designing and analyzing random sampling plans, organizing and managing large database systems, stochastic modeling, and performing advanced statistical analysis.  Our firm has served as statistical consultants to both governmental agencies and the private sector for over twenty-five years.  I have been retained as a statistical consultant in over 250 class action cases, primarily cases involving employment discrimination and wage and hour claims, and I have testified over 25 times as an expert witness (statistical analysis, computer processing) in numerous state and federal courts.  I have never failed to qualify as an expert in statistics in any litigation.  A copy of my current resume is attached hereto as **Appendix 1**.

3.      Plaintiffs' counsel retained me in the case of *Daryl Stitt, et al. v. The San Francisco Metropolitan Transit Agency, et al.* pending in United States District Court, Northern District of California, Case No. C-12-03704-YGR, to act as a statistical consultant and to provide advice and counsel on sampling issues.

4.      Plaintiffs' counsel has provided me with various pleadings, responses to requests for production, deposition transcripts, and data files received through discovery. These data files include Trapeze data, NextBus/Automatic Vehicle Location ("AVL") global position system ("GPS") data, daily details, and operators' personnel files.  I have been asked to evaluate these materials and give my opinion as to (a) whether I could provide a statistical estimate of damages, based on the legal theories put forth by Plaintiffs' counsel, and (b) the extent to which the San Francisco Municipal Transportation Agency (hereinafter "SFMTA") tracks the movements of bus and/or train operators (collectively hereinafter "Operators") throughout their shifts, including arrival and departure times and locations as Operators perform their duties, based on the databases provided to me.

5.      Based on the information provided to me, as well as my experience in several

**DECLARATION OF DR. RICHARD DROGIN, Ph.D.**

other wage and hour cases in which I have made similar calculations, it is my opinion that a combination of calculations made from the available databases, and use of random sampling methods, could be used to make damage estimates in this case. In particular, I could calculate the amount of unpaid wages due to Operators for activities not included in the set of paid activities, the amount of additional wages due above the amount for which operators were paid, penalties owed because of unpaid compensable time, and other related quantities.

6.    Based on the databases provided to me, it is my opinion that SFMTA tracks the movements of the Operators throughout their shifts on a daily basis, including the arrival and departure times and locations as the Operators perform their duties.

**Available Payroll and Operator Data**

**7.**    I have been provided with five (5) types of data obtained through discovery: Range Reports created by SFMTA's scheduling software called Trapeze, AVL GPS data, Operators' personnel files, daily details, and SFMTA's payroll data. Generally, these databases indicate tasks performed by the Operators, and the date of the activity. In addition, there is information for particular runs showing the driving time compensated, standby time, overtime, and travel time if that specific run includes such time. There are some tasks performed by Operators that are not recorded. The following paragraphs describe each of these databases in more detail.

**Trapeze Scheduling Software**

8.    Trapeze is the scheduling software that SFMTA uses to create the daily schedules of each run on a bus or a train throughout the SFMTA system. Trapeze is programmed with running times for each trip. The running time information is based on the "on-time performance" data that SFMTA receives from the software programs described below. Trapeze allows for various parameters and conditions to be used in route and run construction.

9.    Trapeze is also used to create documents known as Range Reports. The Range Reports are broken down into categories which identify the following: starting location of the run, the ending location of a run, any relief point, any standby time, any travel time allotted,

3

the total time duration from on until off, the estimated time that the Operator is driving the bus or train, the operator's report time, lunch allowance, and daily pay for the run, taking into account the applicable pay rates.

### Automated Vehicle Location (AVL)

10.     AVL GPS data is a computerized tracking database provided by NextBus. The AVL data shows when a bus or train actually pulls in and pulls out of starting locations, ending locations, various stops and relief points. The AVL is then matched to the Trapeze Scheduling Software to show any deficits between scheduled time and actual running time of each vehicle operating throughout the SFMTA system. NextBus has an algorithm to match the vehicle number with a specific run in the schedule. All SFMTA bus and train routes are equipped with NextBus outfits.

### Operators' Personnel Records

11.     The Operators' Personnel records include two important pieces of data. First, the personnel files will have a record of any time that an Operator had a meeting with a supervisor.  Second, the files will have records of the specific runs to which operators were assigned for any given time period.

### Daily Details

12.     SFMTA creates a "daily detail" each day for all of its seven divisions. The daily details record any additional driving time that Operator performs beyond their scheduled driving time for that day (also known as "unscheduled overtime") as well as any meeting with a supervisor that an Operator is expected to attend.

### Payroll Records

13.     SFMTA maintains payroll records for each Operator. The payroll records will provide information regarding what run an Operator performed as well as the hours per week that an Operator worked.

### Computation of Damages

14.     Using a combination of the data described above, and the use of random sampling for a survey and/or selecting Operators for depositions or court testimony, a reliable

**DECLARATION OF DR. RICHARD DROGIN, Ph.D.**

estimate of damages can be computed based on Plaintiffs' theory of the case. The damages would consist of the amount of unpaid wages due Operators for activities performed that are not included in the set of paid activities, the amount of additional wages due for time above the amount for which Operators were paid, and the amount of penalties, or premium wages, owed for unpaid compensable time. Damages would be computed for the set of class members, and the days they worked, as determined from the personnel file, run assignments, and the other data described above. During discovery Defendant has indicated that a subset of operators are paid for start-end travel time, however they are readily identifiable and thus ascertainable based on the available data, and the damages computation could account for that where applicable. In the following paragraphs, I outline how various damage components would be computed.

**Damages Due to Unpaid Time Worked**

**15.** For determining damages owed for unpaid time, there are two possible methods that might be used, depending on the completeness and accessibility of the relevant data. In some cases, an exact calculation for everyone in the class can be made, if complete data is available. On the other hand, if data is cumbersome or incomplete, a sample can be drawn from those records which are available, to determine the relevant information manually, and then the results can be projected from the sample to the class as a whole, using appropriate statistical formulas.

**Statutory Penalties**

16. In addition, under Plaintiffs' theory that actual driving time, start-end travel time, turn-in time, and mandatory meeting time were not included in the compensation scheme of operators, the amount of damages owed would also include a calculation of the penalties, or premium wage, for each Operator.

**Random Sampling and Projecting to Population**

17. Random sampling is a statistical technique used to make inferences about an entire population, based on information gathered from a subset of the population. Sampling is used in all areas of research when it is impossible or cumbersome to obtain information about

5

**DECLARATION OF DR. RICHARD DROGIN, Ph.D.**

each member of a population.

18.     When statisticians refer to a *simple random sample* they are referring to a sample that is drawn in such a way that all members of the population are equally likely to be selected.  The *population* is the set of people being studied, which, in this case, would be the putative class of employees.  According to the theory of probability, if all members of the population have an equal chance of being selected, then it is likely that the resulting sample will be representative of the population.  For example, determinations of total unpaid hours worked per week, based on a random sample, are expected to agree with the corresponding population values. The theory of probability allows the specification of how far the population values might differ from their sample estimates, and therefore the accuracy of the estimate can be calculated.  Statisticians specify the accuracy of estimates in terms of a *confidence interval*. The glossary at the end of this affidavit gives a discussion of the basic concepts in random sampling.

19.     In the following section, I will briefly describe some wage and hour class action cases in which I have personally been involved, where random sampling has been used to obtain evidence about plaintiffs' claims.

### Examples of Wage and Hour Cases Where Sampling Was Used

20.     In the case of *Duran* v. *U.S. Bank*, No. 2001-035537, Superior Court of California, Alameda County, Northern Division, the court selected its own random sample of twenty class members to testify at trial.  The issue was whether the Defendant employer properly classified certain employees as exempt under the outside sales exemption rule, and if so, what would the damages be.  These class members were deposed, and then appeared as witnesses at trial.  The court entered its finding of liability, and determined the amount of damages owed in a Phase II proceeding[1] based on findings of fact regarding hours worked for those in the random sample.  The case is now on appeal.

21.     In *Bell v. Farmers Insurance Exchange* the Court ordered Defendants' and

---

[1] *Duran v. U.S. Bank*, Superior Court of California, Alameda County, Case No. 2001-035537, Judgment Against U.S. Bank, and Statement of Decision for Phase II, both filed on May 20, 2009. Also, see Order Re: Statement of Decision for Phase I, filed on July 18, 2008.

**DECLARATION OF DR. RICHARD DROGIN, Ph.D.**

Plaintiffs' statisticians to work together to select a random sample of class members, which was used to collect representative information about hours worked per week. The experts from both parties cooperated to devise the sampling plan, collect the data, and produce progress reports to the court during this process. The experts disagreed about how the collected data should be extrapolated to the population for determination of aggregate class wide damages, and this issue was the only issue decided at trial. This case has been concluded, and damage awards distributed. For complete discussion, see 115 Cal. App. 4th 715 (2004).

22.    In *Rocher, Dahlin* v. *Sav-On Case*, No. BC 227551, Los Angeles Superior Court, State of California, the court ordered both sides to have their statisticians work together to select a random sample of class members to be witnesses at trial. I was retained by Plaintiffs and, working in cooperation with the statistician retained by the Defendant, we were able to select a random sample from the class. This case was settled before the liability trial.

23.    In the case of Coordination Proceeding Special Title (Rule) 1550(b)-Staples Overtime Cases; Case No.: 4235, lead Case No. 816121, Superior Court of the State of California, County of Orange, the Plaintiffs selected a random sample of class members, and designated them as trial witnesses. They were deposed prior to the trial. The Plaintiffs proposed that the judge make a ruling on each person in the sample, as to whether the person was misclassified as an exempt employee or not. Then, these decisions could be projected to the class as a whole, to obtain an overall percentage of those misclassified as exempt. On the eve of trial this case settled.

24.    In *Foster v. Federal Express*, No. BC 282300, Los Angeles County Superior Court, State of California, I selected a random sample of shifts worked by Federal Express Couriers. There were hard-copy documents that indicated time worked off-the-clock that was not recorded in electronic form. Using the random sample it was possible to estimate the average amount of off the clock hours per shift, and to estimate the aggregate class-wide value of off the clock work. In addition, an electronic database recording unpaid meal break periods was compared to another electronic database showing times of pickup and deliveries by

**DECLARATION OF DR. RICHARD DROGIN, Ph.D.**

1  couriers.  Through this comparison, unpaid meal breaks where class members performed work

2  could be identified. This case has settled.

3          25.  In *Pfizenmeier vs. Citifinancial Management Corporation*, County of San

4  Diego Central, Superior Court of California, No. 37-2008-00084289-CU-OE-CTL the court

5  certified a class of Branch Managers working in California branches of Citifinancial who were

6  classified as exempt from overtime pay.  In its order,[2] the court stated "... it is possible to

7  determine whether the branch manager position is exempt based on, among other evidence,

8  statistical sampling."  A trial date has not yet been set as of the writing of this declaration.

9          26.  In *Chibber vs. Taco Bell Corp.* case in the County of San Diego Central,

10  Superior Court of the State of California, No. GIC 870429 the court certified a class of

11  Restaurant General Managers and Market Training Managers employed by Taco Bell Corp. in

12  California who were classified as exempt from overtime pay.  The court adopted random

13  sampling as a procedure for selecting a representative group of witnesses, and stated, "The

14  first 25 randomly selected class members will comprise the representative group, and their

15  testimony will be used by the Court and/or the jury to determine liability and, if necessary,

16  damages."[3]  Plaintiffs and Defendant worked together to draw a random sample of class

17  members to serve as trial witnesses.  This case was settled after Plaintiff's rested their case in

18  chief. .

19          27.  In the *Hernandez v. Anna's Linen Co.* case pending in the County of Orange,

20  Superior Court of California, the court certified a class of Managers and Assistant Managers

21  employed by Anna's Linens in California who were classified as exempt from overtime pay.

22  In the court's Order Granting Motion for Class Certification it was stated, "Further, the Court

23  finds, based upon review of the proposed statistical sampling methodology [Declaration of Dr.

24  Drogin] that the case could be well-managed at trial."[4]  A sample of class members was drawn

25  for use at trial. On the eve of trial this case settled.

26  **Glossary of Statistical Terms**

27  [2] Order issued April 16, 2010, page 2, signed by the Honorable Stephen R. Denton.  See Exhibit G
   [3] Trial Order, dated October 28, 2010, page 6, lines 13-15.  See Exhibit H.

28  [4] Court order, dated April 16, 2010, page 8, lines 4-7. See Exhibit I.

**DECLARATION OF DR. RICHARD DROGIN, Ph.D.**

28.    A confidence interval consists of an estimate of a population quantity, a range of values around the estimate, and a degree of confidence that the population quantity being estimated is in that range.  The most commonly used degree of confidence is 95% -- and that is the confidence interval approved by the Court in *Bell v. Farmers Insurance Exchange*, 115 Cal.App.4[th] 715 (2004) where I served as an expert witness for the Plaintiffs.  A 95% confidence interval for a population quantity is computed so that the confidence interval range will include the population quantity in 95% of possible samples.  The range of a confidence interval may be expressed alternatively in terms of a margin of error, which is just 1/2 of the range.  For example, suppose the 95% confidence interval for the average number of unpaid hours per week worked by class members was 4 hours plus or minus 0.50 hours.  This means that we can be 95% confident that the average number of unpaid hours worked per week for the whole class is between 3.5 and 4.5 hours.

29.    The larger the sample size, the smaller the range in the 95% confidence interval.  If the desired range of the confidence interval is specified, then the sample size required to achieve that range can be computed.  This computation requires knowing something about the variation in the population data, as measured by a statistical quantity called the *standard deviation*.  For most datasets[5], about 2/3 of the values in the data are within 1 standard deviation from the mean, and about 95% of the values are within 2 standard deviations from the mean.

30.    Of course, larger sample sizes give more accurate estimates, but they involve somewhat more time and expense.  There is a practical trade off between increased accuracy and cost.  Statistical theory does not give a "correct" or "standard" margin of error that is appropriate in all sampling situations.  The choice of a required margin of error estimate is an issue that should either be agreed upon by the parties, or set by the court.

31.    There is no predetermined sample size.  The well respected statistician Prof. David Freedman has stated the following: "How Big Should the Sample Be?  There is no definitive statistical answer to this familiar question.  Bigger samples have less sampling

---

[5] These general rules apply exactly to data that has a bell shaped (normal) distribution.

**DECLARATION OF DR. RICHARD DROGIN, Ph.D.**

error.  On the other hand, smaller samples may be easier to manage, and have less non-sampling error.  Bigger samples are more expensive than smaller ones: generally, resource constraints will determine the sample size.  If a pilot study is done, it may be possible to judge the implications of sample size for accuracy or final estimates."[6]

32.     The margin of error is only one factor to consider when evaluating the reliability of an estimate based on a random sample.  Other relevant considerations include response rate, absence of measurement error, and whether there is corroborating information other than the sample itself that would indicate whether the estimate might be under or over-estimating the true value in the population.

**Two Stage Sampling**

33.     If a required margin of error for the confidence interval is specified, then the sample size required to achieve that margin of error can be computed.  However, this requires knowing something about the variation in the population data (i.e. the standard deviation).  Prior to sampling, the variation in the population will not be known.[7]  In this situation, it is recommended that a relatively small pilot sample be drawn first to measure the variation. The observed variation in the pilot sample is then used to estimate the number of additional sample observations needed in a second sample to achieve the required margin of error.

34.     A two stage sampling procedure was utilized in *Bell v. Farmers Insurance Exchange*: First, an initial sample of 50 class members were selected, and the hours of overtime per week for this sample were evaluated. Based on an initial sample size of 50, the mean hours of overtime per week was 7.33 hours, with an error bound of plus or minus 2.75 hours.  The court then specified the desired error bound of plus or minus 1 hour, which would have been about 13% of the mean at that time.  To reach the goal of obtaining a margin of error of plus or minus 1 hour, I worked with the Defendant's statistician to determine that an additional 245 observations were required. Subsequently, after the additional 245 observations

---

[6] D.A. Freedman. "Sampling." In the *Encyclopedia of Social Science Research Methods*. Sage Publications (2004) Vol. 3 pp. 986–990. M. Lewis-Beck, A. Bryman, and T. F. Liao, eds.

[7] It is often possible to give an upper bound for the standard deviation, based on knowledge of possible, or highly likely, values of the variable being measured.

**DECLARATION OF DR. RICHARD DROGIN, Ph.D.**

from the second sample were taken, the mean overtime hours per week was 9.42 with an error bound of plus or minus 0.93 hours, which was about 10% of the mean.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on this 31st day of December 2013 at Berkeley, California.

Richard Drogin

_____

Richard Drogin, Ph. D.

DECLARATION OF DR. RICHARD DROGIN, Ph.D.

Appendix 1

## Vita of RICHARD DROGIN
rdrogin@dkstat.com
www.dkstat.com

**CURRENT POSITIONS**

Professor Emeritus of Statistics, Calif. State University, Hayward, CA, since 1996;
Partner in Drogin, Kakigi and Associates, Statistical Consultants, since 1977;

**PRIOR WORK EXPERIENCE**

Professor of Statistics, Calif. State University, Hayward, CA, 1973-96;
Currently Professor Emeritus;
Ass't Professor of Mathematical Statistics, Columbia University, N.Y., 1971-73;
Faculty Fellow, Mathematics, University of Sussex, Brighton, England, 1970-71;

**EDUCATION**

University of California, Berkeley, 1967-70, Statistics, Ph.D.;
Columbia University, New York, 1966-67, Statistics;
University of California, Berkeley, 1961-66, A.B.;

**JOURNAL PUBLICATIONS**

"An Invariance Principle for Martingales", Annals of Mathematical Statistics, Vol. 43, No. 2, 1972, pp. 602-620;

"Convergence in Probability to Brownian Motion", Annals of Probability, Vol. 1, No. 2, April, 1973, pp. 254-262;

Co-author, with Michael Orkin, of "Risky Business", a review of the spreadsheet/simulation program PREDICT, appeared in PC World, October,  1987, pps 178-183;

**BOOK PUBLICATION**

Vital Statistics, (Co-Author, Michael Orkin), McGraw Hill, 1974;

**SOFTWARE**

Developer of "NIGHTSHIFT" program, an artificial intelligence system utilizing genetic algorithms to identify patterns in databases (1995);

Certified Apple Software Developer, and member of Apple Programmer's and Developer's Association; May, 1987 to 1993;

Beta tester for Borland International for Turbo Pascal for the Macintosh (1986-87), and Turbo Pascal Database Toolbox for the Macintosh (1987);

Co-developer, with Michael Orkin, of "THE EXPERT": artificial intelligence system for identifying patterns in football and basketball data for PC's, 1990, and other sports database programs;

Co-developer, with Michael Orkin and Roxy Roxborough, of "ROXY'S POWER RATINGS", a power ratings system for pro-football for PC's, 1990;

LEGAL CONSULTING

Testified as expert witness in statistics over twenty times in federal, state, and superior Court;

A partial list of clients includes the Equal Employment Opportunity, The California State Department of Fair Employment and Housing, the Federal Public Defender's Office, Office of Civil Rights, Littler Mendelson Fastiff Tichy Mathiason, Morrison & Foerster, the Alameda County Public Defender's Office, the City Attorney's Office of Oakland, Legal Aid Society of Alameda County, San Francisco Neighborhood Legal Assistance, Public Advocates, Equal Rights Advocates, the Employment Law Center, Center for Law in the Public Interest, California Teachers Association, Internation Brotherhood of Electrical Workers, California State Employees Association,  Mexican American Legal Defense and Educational Fund, and the NAACP Legal Defense Fund, the law firm of Saperstein, Goldstein, Demchak and Baller, the law firm of Sprenger and Lang, the law firm of Rudy, Excelrod and Zieff; the law firm of Righetti Glugoski, the Wynne Law Firm; the law firm of Lieff, Cabraser, Heimann and Bernstein, the law firm of Sanford, Wittels & Heisler; and The Impact Fund.

OTHER CONSULTING

Retained by JAMS (ADR) to perform statistical analysis of rejection rates among adjudicators for claims submitted in a class action settlement, May 2012.

Retained as court appointed statistical expert in Consolidated Class Actions v. Sunshine Communications, Case No. GIC 780641, Superior Court of California, San Diego County, 2003.

Retained by the California State Department of Fair Employment and Housing to analyze employment data for Lawrence Livermore Laboratory, 2001;

Retained by Office of Civil Rights, Department of Education, to analyze law  school admission and criteria for several University of California Law Schools, 1997-8;

Calculation of probabilities of various card game outcomes for Casino San Pablo, 1996-7;

Custom programming to produce summaries of  personnel data for California hospital associations, 1996-7;

Analysis of phone quality data for J Walter Thompson advertising agency, 1990;

Sample design and review of drug testing program for IBEW, 1990;

Sample design and analysis of data for BART study of commuter patterns, 1989;

Development of market research multiple regression software package for Gazette Press, Inc., 1987

Analysis of employment patterns among Operating Engineers, Local 3, for the Affirmative Action Trust Fund, appointed by defendants and plaintiffs, 1986-87;

Analysis of 1970 and 1980 census data regarding changes in occupational status of women, Institute for the Study of Social Change, U.C., Berkeley, July, 1984;

Analysis of University Admissions data at U.C., Berkeley, for Student Affirmative Action Advisory Committee, September, 1982;

Analysis of employment patterns and opinion survey data for the U.S. Forest Service, in preparation of an affirmative action plan, 1981-82;

Analysis of housing sales in the Fruitvale and West Oakland areas of Oakland for Oakland Community Organization, 1980-81;

Statistical consultant on survey of Mexican Immigration patterns, 1980-81;

Statistical analysis of Law School Admissions data for Mexican American Legal Defense and Education Fund, 1980;

Develop statistical analysis of California Loan Registry Data for Legal Aid Society of Alameda County, Legal Aid Society of Los Angeles, California Rural Legal Assistance, San Francisco neighborhood Legal Assistance, and Public Advocates, 1978-81;

INVITED LECTURES & SEMINARS

Panelist at Lawyers Coordinating Committee AFL-CIO Southern California Regional Conference, Statistical Sampling in Wage and Hour Cases, October 30, 2007

Panelist at American Conference Institute's 5th National Forum on "Wage Hour Litigation", October 4, 2007

Panelist at California Employment Lawyers Association Conference, May 11, 2007, "Using Expert Testimony"

Panelist at ABA Labor & Employment Law Conference, March 29, 2001, breakout session on the "Use of Statistical Evidence in Employment Discrimination Litigation"

Presented seminar on statistical methods and expert witness testimony in Title VII cases at Hastings School of Law, February, 1997, March, 1998, and February, 1999;

Appeared on cable TV interview show to discuss statistical

analysis in employement discrimination litigation, Calif. State
University, Hayward, CA, November 10, 1995;

Presented lecture on computers, databases, and statistical proof
in large class action lawsuits, at the "Litigating Civil and
 Statuory Class Actions" conference, Hastings College of Law, April 30, 1994;

Presented a seminar on statistical methods in age discrimination cases for Practicing
Law Institute, February 13, 1987;

Presented seminar on statistical methods at Golden Gate University Law School,
February, 1983;

Presented one day seminar for attorneys and staff of the State Department of Fair
Employment and Housing, on statistical methods, February 5, 1982;

Presented a talk to the American Statistical Association meeting, February, 1982, on
statistical methods used in Title VII cases;

Presented talks at the MALDEF-EEOC conferences on discrimination and the Law,
San Francisco, June, 1978, and Los Angeles, October, 1978;

**DECLARATIONS and TESTIMONY**
**since 1990**
Dr. Richard Drogin
as of November 2013

LOU V. MA LABORATORIES, Case No. 3:12-cv-05409-WHA (NC), United States District Court, Northern District of California, declarations August and October 2013.

JONES V. CANON BUSINESS SOLUTIONS, Case No. 2:12-CV-07195-JAK-JEM, United States District Court, Central District of California, declaration July 2013.

ICARD V. ECOLAB, Case No. CGC-09-495344, Superior Court of the State of California, County of San Francisco, declarations April and May 2013.

PAPARELLA V. JP MORGAN CHASE, Case No. 30-2010-00370146, Superior Court of California, Orange County, declarations February and July 2013, deposition March 2013.

LADORE V. ECOLAB, Case No. CV 11-9386 FMO (FMOx), United States District Court, Central District of California, declaration January 2013.

MCCARTHY V. VALERO, Case No. 1100059728, JAMS San Francisco, declaration December 2012.

GOMEZ V. PIZZA HUT OF SOUTHEAST KANSAS, Case No., CIVVS 900679, Superior Court of the State of California for the County of San Bernardino, deposition October 2012.

YOUNG V. WADDELL & REED, Case No. 09 CV 02909 DMS (WVG), U.S. District Court, Southern District of California, declaration July 2012, deposition July 2012.

FRALEY V. FACEBOOK, Case No. 11-CV-01726 (PSG), U.S. District Court, Northern District of California, San Jose Division, declaration March 2012, deposition April 2012.

RIEVE V. COVENTRY HEALTH CARE, Case No. SACV 11-1032 DOC (MLGx), declaration February 2012, deposition May 2012.

PYTELEWSKI V. COSTCO WHOLESALE CORPORATION, Case No. 09-CV-2473(BLM), U.S. District Court, Southern District of California, declaration February 2012, deposition

BICKLEY V. SCHNEIDER NATIONAL CARRIERS, Case No. 3:08-cv-05806-JSW (NMC), U.S. District Court, Northern District of California, declarations November 2011, January 2012, February 2012.

WILLIAMS V. H&R BLOCK FINANCIAL ADVISERS, Case No. RG08366506, Superior Court of California, County of Alameda, declarations December 2011, January 2012.

LUQUE V. AT&T CORP., PACIFIC BELL TELEPHONE CO., Case No. 3:09CV5885, U.S. District Court, Northern District of California, declaration December 2011.

ARTIS v. JOHN DEERE, Case No. C-10-05289 WHA, U.S. District Court, Northern District, California, declaration November 2011.

DRISCOLL v. GRANITEROCK COMPANY Superior Court California, County of Santa Clara, Case No.: 1-08-CV-103426, deposition and trial testimony July 2011.

UPSON v. SUR LA TABLE INC., Case BC424012, Superior Court California, County of Los Angeles, declaration February 2011, deposition March 2011.

WALKER v. USPS, EEOC Case No. 320-A2-8390X, Agency Case No. 4E-800-0240-02, declaration January 2011, deposition February 2011, trial testimony January 2012.

CORDOVA v. COMERICA BANK, Case No. 2:09-cv-08905-MMM (PLAx), United States District Court, Central District of California, declaration, December 20, 2010.

LEIGHTON v, ALDO, U.S. INC., Case No. BC386379, Superior Court of California, County of Los Angeles, declaration December 13, 2010.

STOETZL v. STATE OF CALIFORNIA, DEPT OF CORRECTIONS, Case No. CGC-08-474096, Superior Court of California, County of San Francisco, declarations July and September 2010.

BURAKOFF v. US BANCORP, Case No. BC341430, Superior Court in the State of California, County of Los Angeles, (Central District) declarations August and September 2010.

BEHAEIN v. PIZZA HUT, Case No. BC384563, Superior Court in the State of California, County of Los Angeles, (Central Civil West) declaration August 2010.

SHARON PERKINS v. SOUTHERN NEW ENGLAND TELEPHONE COMPANY, Case No. 3:07CV967 (JCH), United States District Court, District of Connecticut, declaration April, October, December 2010.

ROSEN V. BMO NESBITT BURNS, Case No. CV-10-396685, Ontario Superior Court of Justice, Canada, declarations June 2010, January 2011, March 2012.

TRAN v. PROTIVITI CORP., Case No. BC351862, Superior Corut in the State of California, County of Los Angeles, declarations January and February 2010.

KASTANOS v. CENTRAL CONCRETE SUPPLY CO., Case No. HG07-319366 County of Alameda, Superior Court of the State of California, declarations November 2009 and January 2010.

KRONING v. MR. CHOW ENTERPRISES, Case No. BC390641, County of Los Angeles, Superior Court of the State of California, declaration December 2009.

CALIFORNIA CORRECTIONAL PEACE OFFICERS' ASSOCIATION v. ARNOLD SCHWARZENEGGER, in his capacity as Governor of the State of California, Case No. RG-09-441544, County of Alameda, Superior Court of the State of California, declaration November 2009.

GARNER v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Case No. CV 08 1365 CW (EMC), United States District Court, Northern District of Calfioria, declarations August and September 2009.

PFIZENMEIER v. CITIFINANCIAL MANAGEMENT CORPORATION, Case No. 37-2008-00084289-CU-OE-CTL, Superior Court of the State of California, County San Diego, declaration, September 2009 and February 2010.

HERNANDEZ v. ANNA'S LINENS, Case No. GIC 840481, County of Orange, Superior Court of the State of California, declaration, declaration June 2009, May 2010, deposition January 2011.

RODRIGUEZ v. GATE CITY BEVERAGE DISTRIBUTORS, Case No. SCVSS142242 consolidated with Case No. SCVSS 147748, Superior Court of the State of California, County of San Bernardino, Western; declaration, June 2009.

RANDALL v. ROLLS ROYCE CORPORATION, Cause No.: 1:06-CV-0860-SEB-JPG, United States District Court, Southern District of Indiana, Indianapolis Division, declarations April, May 2009.

ROSA v. MORRISON HOMES INC., Stanislaus County Superior Court, State of California, Case No. 373059, declaration, February 2009.

TANKSLEY et. al. v. NORTHWEST AIRLINES, INC. and AIR LINE PILOTS INTERNATIONAL, Civil File No. 07-4803 (JNE/JJG), United States District Court, District of Minnesota, declaration December 2008.

FONG v. HOOP RETAIL STORES, LLC dba THE DISNEY STORE, County of Los Angeles, Superior Court of the State of California, declarations, Case No. BC 355121, declarations October and December 2008, March 2009.

PIPER v. RGIS, Case No. 3:06-cv-05778 JCS, Case No. 3:07-cv-00032 JCS, United States District Court, Northern District of California, declarations 2008

SYVERSON v. IBM, Case No. C 03 04529 RMW, United States District Court, Northern District of Calfiornia, San Jose Division, declaration July and September 2008

PUCHALSKI v. TACO BELL CORP., Case No. GIC 870429, Superior Court in the State of California, County of San Diego, declarations July 2008, July 2009, and September 2010, November 2011, depositions April 2009 and April 2012, trial testimony April 2012.

MCCRACKEN v. CANADIAN NATIONAL RAILWAY COMPANY, Court File No. 08-CV-351183 CP, Ontario Superior Court of Justice, affidavit July 2008, March 2009.

FULAWKA v. BANK OF NOVA SCOTIA, Court File No. 07-CV-345166CP, Ontario Superior Court of Justice, affidavits June 2008, January 2009.

HOLLOWAY v. BEST BUY, Case No. C-05-5056, PJH (MEJ) U.S. District Court, Northern District, California, various declarations and deposition, 2008.

CHOU V. STARBUCKS CORPORATION, Case No. GIC 836925, County of San Diego, Superior Court of the State of California, declarations, November 16, 2007, and February 28, 2008, deposition March 2008, trial testimony March 12, 2008.

DARA FRESCO V. CANADIAN IMPERIAL BANK OF COMMERCE, Court File No. 07-CV-334112CP, Ontario Superior Court of Justice, affidavits November 2007, July 2008, deposition October 2008.

BROWN V. CANADIAN IMPERIAL BANK OF COMMERCE, Court File No. CV-08-365119CP, Ontario Superior Court of Justice, affidavits April 2010, January 2011, May 2011, deposition October 2011.

JANTZ V. SSA, EEOC No. 531-2006-00276X, Agency No. HQ-06-2518-SSA, EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, BALTIMORE DISTRICT OFFICE. Declaration, November 2007.

CICAIROS V. SUMMIT LOGISTIC INC. AND BLUEFORD V. SAFEWAY INC., Case No. CV014837, County of San Joaquin – Stockton Branch of the State of California; declarations, October 1, 2007, April 2012.

PAUL VELIZ V. CINTAS CORPORATION, Case No 03-01180 (SBA), United States District Court, Northern District of Calfiornia, (Oakland Division), declaration September 2007 and March 2009, deposition March 2009.

CLAUSNITZER V. FEDERAL EXPRESS CORP., Civil Action No. 06-21457-CIV-Altonage/Turnoff, United States District Court Southern District of Florida, Miami Division; declaration September 14, 2007

WARD V. ALBERTSON, Case No. BC237646, County of Los Angeles, Superior Court of the State of California, declaration, May 2007

DURAN V. US.BANK NATIONAL ASSOCIATE,Case No. 2001-035537, County of Alameda, Superior Court of the State of California, declaration, deposition, June 2006, April 2007

HOHNBAUM V. BRINKER RESTAURANT CORPORATION, Case No. GIC 834348, San Diego, Superior Court, State of California, declaration May 2006;

ROCHER et al. V. SAV-ON DRUG STORES, INC., Case No. BC 227720, Los Angeles Superior Court, State of California, declaration, March 2006;

FOSTER v. FEDERAL EXPRESS, No. BC 282300, Los Angeles County Superior Court, State of California; declaration, February 2006

Coordinating Proceeding Special Title (Rule) 1550(b)-Shake Roof Cases; Judicial Council Coordination Proceeding No. 4208, Superior Court of the State of California, Contra Costa County; report, deposition and trial 2005.

ELLIS V. COSTCO WHOLESALE CORPORATION, Case No.  C-04-3341 MHP, U.S. District Court, Northern District, California, declaration, May 2005, May 2006, November 2006.

Coordinating Proceeding Special Title (Rule) 1550(b)-Staples Overtime Cases; Case No.:4235, lead Case No. 816121, Superior Court of the State of California, County of Orange; deposition April 2005.

SATCHELL V. FEDERAL EXPRESS, C 03-2659 SI; C 03-2878 SI, U.S. District Court, Northern District, California, various declarations and deposition, 2004.

PARRA V. BASHAS' INC., Case No. CIV 02 0591 PHX RCB, U.S. District Court, District of Arizona, declaration and deposition, July 2004.

ERVIN V. RATELLE, Case N. BS 215587, Superior Court of The State of California, County of San Diego; deposition, January 2004.

SYLVESTER MCCLAIN v. LUFKIN INDUSTRIES, INC.,  Case No. 9:97-CV-063, U.S. District Court, Eastern District of Texas, report, deposition, trial 2003; declaration March 2009.

GARRETT CUTLER v. WAL-MART STORES, No., CA-02-10206, Circuit Court for Prince George County, Maryland, declaration and deposition, 2003.

CRYSTAL SALVAS v. WAL-MART STORES, No. 01-3645,  Middlesex, Superior Court Department, Commonwealth of Massachusetts, declaration and deposition, 2003

RICHISON v. AMERICAN CEMWOOD, Case No. 005532, San Jouquin County Superior Court, State of California; declarations, deposition, 2002-3.

DUKES v. WAL-MART, INC., C-01-2252 MJJ, ,  U.S. District Court, Northern District, California, various declarations and deposition, 2003.

SALGADU v. MABUBANI, et. al, No, CV01-04360 FMC, Central District of California, declaration 2002, deposition January, 2003.

MITCHELL, et. al. v.METROPOLITAN LIFE INSURANCE CO., 01 Civ.2112 (WHP) declaration December 2002 and deposition January, 2003.

SAVAGLIO V. WAL-MART STORES, CASE NO. 835687-7 Superior Court of The State of California, County of Alameda; declaration and deposition, December 2002.

STONE V. FIRST UNION CORP., NO. 94-6932-CIV-GOLD,  U.S. District Court, Southern District of Florida, Miami Division, declaration, 2002, deposition 2005.

BELL V. FARMERS INSURANCE, NO.774013-0, Alameda County Superior Court, State of California; declarations, deposition,1999-2001, trial testimony 2001;  Appeal decision 115 Cal.App.4th 715 (2004)

YBARRA et al V. CALIFORNIA REDI-DATE COMPANY, No. CV 00-7043/7044 U.S. District Court, Northern District, California, declaration and deposition, 2001;

AGUARDO et al. V. PIZZA HUT, San Francisco County Superior Court, State of California, Case No. 994947; declaration February 2001;

BROOKS V. FIRST UNION, Superior Court of New Jersey, Middlesex Country, No. L-2401-99; declarations February 2001 and 2002, deposition 2005;

SINGLETON V. REGENTS OF THE UNIVERSITY OF CALIFORNIA, No. 807233-1, Alameda County Superior Court, State of California; declarations and deposition 2000-2;

BECKMANN V. WCCO et. al., File No. 3-96 Civ. 1172, declaration and deposition, 1999;

CHARLES V. SECRETARY OF NAVY, C 91-2153 MHP, declaration, 1998;

JARVAISE V. RAND Corp, NO 1:96CV02680 (HHG); declaration and deposition, 1998;

TURNER V. TOROTEL, INC., No. 96-0646-CV-W-5, declaration and deposition, 1998;

BUTLER v. HOME DEPOT U.S.A., INC., No. C 95-2182 SI,  U.S. District Court, Northern District, California, various declaration and deposition, 1997;

CANADY V. ALLSTATE INSURANCE COMPANY, ET AL., NO. 96-0174-CV-W-2, U.S. District Court, Western District of Missouri, Western Division; declaration 1997;

BYRD v. SPRINT CORPORATION, ET AL., No. CV92-18979, Circuit Court of Jackson County, Missouri at Kansas City; declaration 1996;

SHORES v. PUBLIX SUPER MARKETS, INC., No. 95-1162-CIV-T-25E, U.S. District Court, Middle District of Florida, Tampa Division; declarations submitted for class certification, 1995; presentation to mediator in settlement talks 1996;

PLUMMER v. DON COTE, ALAMEDA COUNTY, C-94-0838 EFL,  Superior Court, Alameda County, California; declaration submitted, February, 1996;

JONES v. FORD MOTOR COMPANY, No. 95-MD-1044, 95-71123, 3-93-370, Eastern District of Michigan, Southern Division; declarations submitted for class certification, deposition, 1995-1996, 1998;

APPLETON, v. DELOITTE & TOUCHE, No. 3-95-0483 (Middle District of Tennessee); declaration submitted for class certification, deposition, 1995, 1996;

FRANK V. UNITED AIRLINES, INC., N.D. Cal. Case No C92 0692 CAL declarations and deposition, 1995-96;

ROBERT ADAMS, JR. v. PINOLE POINT STEEL COMPANY, NO. C-92-1962 MHP, U.S. District Court, Northern District, California;  declaration submitted for class certification, deposition 1993, 1994, 1995;

SONDRA W. HYMAN v. FIRST UNION CORPORATON, Civil No. 94-1043 (EGS), U.S. District Court, District of Columbia; various declarations, 1994, 1995, 1997;

WHITING v. HUNTER, MO. 676752-50H,  Alameda Country Superior Court, California; deposition and trial testimony, 1995, 1996;

BABBITT v. ALBERTSON'S INC., No. C92 1883 SBA (PJH), Northern District of California; declarations, 1994;

TAYLOR v. O'CHARLEY'S, No. 3:94-0489, U.S. District Court, Middle District of Tennessee; declarations, 1994;

BARBARA JEAN HERRING v. SAVE MART, No. C-90-3571 BAC, U.S. District Court, Northern District, California, December 17, 1993;

NANCY J. STENDER v. LUCKY STORES, Inc, No. C-88-1467 MHP, U.S. District
Court, Northern District, California, 1991 & 1992, deposed and submitted reports for
liability and damage trials;

HAYNES v. SHONEY,  No. PCA 89-30093-RV, U.S. District Court, Northern District
of Florida; declaration submitted for class certification, 1991;

PINES v. STATE FARM, SA CV 89 - 631 AHS (RWRx), U.S. District Court, central
District of California; declaration submitted for class certification, 1991;

SIBI SOROKA, SUE URRY, and WILLIAM D'ARCANGELO v. DAYTON HUDSON
CORP., dba TARGET STORES, No. H-143579-3, Superior Court, County of Alameda,
California; declaration 1990;