1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

DARRYL A. STITT, TONY GRANDBERRY, AND
HEDY GRIFFIN, ON BEHALF OF THEMSELVES
AND ALL OTHERS SIMILARLY SITUATED,

      **Plaintiffs,**

      **vs.**

THE SAN FRANCISCO MUNICIPAL
TRANSPORTATION AGENCY, *et al.*,

      **Defendants.**

Case No.: 12-CV-3704 YGR

ORDER GRANTING PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION AND MOTION FOR
APPROVAL OF HOFFMAN-LA ROCHE NOTICE

      Now before the Court is Plaintiffs' Motion for Class Certification pursuant to Federal Rule
of Civil Procedure 23 and Plaintiffs' Motion for Approval of *Hoffmann-La Roche* Notice pursuant
to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and *Hoffmann-La Roche Inc. v.
Sperling*, 493 U.S. 165 (1989).

      Having carefully considered the memoranda and evidence, oral arguments of counsel, and
the relevant statutory and case law, the Court hereby **GRANTS** Plaintiffs' motions.[1]

---

[1] The Court **GRANTS** Plaintiffs' Request for Judicial Notice in Support of Plaintiffs' Motion for
Class Certification.  (Dkt. No. 154.)  The Court **OVERRULES** without prejudice both parties'
objections to evidence.  For purposes of the class certification inquiry, the evidence need not be
presented in a form that would be admissible at trial.  6A Fed. Proc., L.Ed. § 12:281 (citing
*Dominguez v. Schwarzenegger*, 270 F.R.D. 477 (N.D. Cal. 2010)).  "The court need not address the
ultimate admissibility of the parties' proffered exhibits, documents and testimony at this stage, and
may consider them where necessary for resolution of the [Motion for Class Certification]."  *Alonzo
v. Maximus, Inc*., 275 F.R.D. 513, 519 (C.D. Cal. 2011), *reconsideration denied*, 2011 WL
3802769 (C.D. Cal. Aug. 23, 2011) (quoting *Mazza v. Am. Honda Motor Co*., 254 F.R.D. 610, 616
(C.D. Cal. 2008), *overruled on other grounds,* 666 F.3d 581 (9th Cir. 2012)). Given the relaxed

1    I.      **BACKGROUND**

2        This is a wage and hour class and collective action.  Plaintiffs and class members are all

3    individuals who are currently employed, or formerly have been employed, by Defendant City and

4    County of San Francisco, within its constituent department Defendant San Francisco Municipal

5    Transportation Agency ("SFMTA"),[2] ("Defendant") as a bus or train operator or in an equivalent

6    position ("Operators") at any time on or after July 16, 2009.  Plaintiffs' primary claims are that they

7    and other Operators were not paid for all hours worked as required by law.  Specifically, Plaintiffs

8    allege four categories of time that are compensable but for which Defendant has not compensated

9    class members: (1) start-end travel time; (2) turn-in time; (3) meeting time; and (4) late time.

10        Plaintiffs seek to certify the following defined class pursuant to subsections (a) and

11    (b)(3) of Rule 23 of the Federal Rules of Civil Procedure:

12              All individuals who are currently employed, or formerly have been
                employed, by the San Francisco Municipal Transportation Agency
13              and/or the City and County of San Francisco as a bus or train
                operator or in an equivalent position (Classification 9163) at any
14              time on or after July 16, 2009.  Excluded from the Class are anyone
                employed by counsel for Plaintiffs in this action, and any Judge to
15              whom this action is assigned and his or her immediate family
                members.
16

17        Plaintiffs seek certification of the above-defined class with respect to the following three

18    causes of action of the Second Amended Complaint (Dkt. No. 69):  (a) Second Cause of Action -

19    Failure to Pay All Straight Time Hours Worked in Violation of Industrial Wage Commission Order

20    9-2001 and Cal. Labor Code section 1194; (b) Third Cause of Action - Failure to Pay the Minimum

21    Wage for All Hours Worked in Violation of San Francisco Municipal Code section 12; and (c)

22

23    _____

24    evidentiary standard at the class certification stage, the Court will exercise its discretion and
      consider the evidence necessary for resolution of the motion.  The Court further notes that
25    Defendant's Objections to Evidence were not filed in conformity with this Court's Local Rules, nor
      where they timely filed.  (*See* Dkt. No. 169.)  In the future, the Court will only consider objections
26    raised within the parties' briefs in accordance with the Northern District Local Civil Rules. (*See*
      N.D. Cal. L. Civ. R. 7-3(a).)
27

28    [2] Defendant City and County of San Francisco represents that SFMTA is a constituent department
      of the City and County of San Francisco.  (Dkt. Nos. 13, 167.)

1   Fourth Cause of Action – PAGA Claims, Private Attorneys General Act of 2004, Cal. Labor Code

2   section 2699(a), (f).

3           Plaintiffs also seek authorization to send a Class Notice pursuant to Rule 23 to all members

4   of the defined class, authorization of Plaintiffs Darryl A. Stitt, Tony Grandberry, and Hedy Griffin

5   as representatives of the class, and appointment of The Tidrick Law Firm as class counsel.

6           Finally, Plaintiffs seek an order conditonally certifying this action as a collective action and

7   granting leave to mail notice, pursuant to *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165

8   (1989), with respect to the First Cause of Action:  failure to pay overtime in violation of the FLSA,

9   29 U.S.C. § 201 *et seq.*

10  **II.      LEGAL STANDARDS**

11          Class certification under Rule 23 is a two-step process.  First, the Court must determine that

12  all the prerequisites to certification in subpart (a) of Rule 23 are met:  numerosity, commonality,

13  typicality, and adequacy.  Second, the Court must determine that one of the bases in subpart (b) of

14  Rule 23 is met.  The party seeking class certification bears the burden of demonstrating by a

15  preponderance of the evidence that all four requirements of Rule 23(a) and at least one of the three

16  requirements under Rule 23(b) are met.  *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551

17  (2011) ("A party seeking class certification must affirmatively demonstrate his compliance with the

18  Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties,

19  common questions of law or fact, etc.") (citation omitted, emphasis in original).

20          Here, Plaintiffs seek certification pursuant to Rule 23(b)(3), the predominance standard.  To

21  certify a damages class under Rule 23(b)(3), the party seeking class certification must establish that

22  "questions of law or fact common to class members predominate over any questions affecting only

23  individual members" and that a class action would be "superior to other available methods for fairly

24  and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  The shared legal or factual

25  issues must be of sufficient importance to the case that the Court is convinced that the most

26  efficient, fair, and sensible method of adjudication is through a class action.  CAL. PRAC. GUIDE

27  FED. CIV. PRO. BEFORE TRIAL Ch. 10-C § 10:274 (citing *Califano v. Yamasaki*, 442 U.S. 682, 701

28

(1979)).  Therefore, the predominance inquiry focuses on "whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Hanlon. v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997) (internal quotation marks omitted).  Where questions common to class members represent significant issues that can be resolved in a single adjudication, "there is clear justification for handling the dispute on a representative rather than on an individual basis."  *Id.* (internal quotation marks and citation omitted).

The Court must conduct a "rigorous analysis" to determine whether Plaintiffs have established the requirements of Rule 23 to ensure that a departure from the general rule of individual litigation is justified.  *General Tel. Co. v. Falcon*, 457 U.S. 147, 160–61 (1982).  The Court considers the merits to the extent that they "overlap with the Rule 23(a) requirements."  *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011) (citing *Wal-Mart Stores, Inc.*, 131 S. Ct. at 2551–52).  To satisfy itself that class certification is proper, the Court may consider material beyond the pleadings and require supplemental evidentiary submissions by the parties.  *Blackie v. Barrack*, 524 F.2d 891, 901 n. 17 (9th Cir. 1975).  "When resolving such factual disputes in the context of a motion for class certification, district courts must consider 'the persuasiveness of the evidence presented.'"  *Aburto v. Verizon Cal., Inc.*, 2012 WL 10381, at *2 (C.D. Cal.) (quoting *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir. 2011)).  Ultimately, it is in the district court's discretion whether a class should be certified.  *Molski v. Gleich*, 318 F.3d 937, 946 (9th Cir. 2003); *Burkhalter v. Travel Agency v. MacFarms Int'l., Inc.*, 141 F.R.D. 144, 152 (N.D. Cal. 1991).

### III.     DISCUSSION

A moving party must demonstrate compliance with the prerequisites of both subparts 23(a) and 23(b).  Accordingly, the Court considers each requirement in turn.

#### A.     Rule 23(a)

##### 1.     Numerosity

Rule 23 requires that the class must be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  As a general rule, classes numbering greater than 41 individuals satisfy the numerosity requirement.  *See* 5 James Wm. Moore et al., *Moore's Federal*

4

1    *Practice* § 23.22[1][b] (3d ed.2004).  Although Plaintiffs need not allege the exact number or

2    identity of class members to satisfy the numerosity prerequisite, mere speculation as to the number

3    of parties involved is not sufficient to satisfy the numerosity requirement.  *See Freedman v.*

4    *Louisiana–Pac. Corp.*, 922 F.Supp. 377, 398 (D. Or. 1996); 7 Wright, Miller, & Kane, *Federal*

5    *Practice and Procedure* § 1762 (3d ed.1995).

6           Plaintiffs have demonstrated, and Defendants concede, that the class is sufficiently

7    numerous.  Based on evidence produced in discovery, Plaintiffs contend that there are more than

8    two thousand class members.  *See* Del Barrio Dep., Ex. 13 (Limited Scope Performance Audit) at

9    63 (noting that as of March 2010, the available operator force required by the Memorandum of

10   Understanding was 2,086 and there were 2,172 filled positions).  Given the number of class

11   members, joinder would be impracticable.  The Court therefore finds that Plaintiffs have met their

12   burden as to Rule 23(a)(1).

              **2.  Commonality**

14          Under Rule 23(a)(2), Plaintiff must show that "there are questions of law or fact common to

15   the class."  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2550–51 (2011).  "Commonality

16   requires the plaintiff to demonstrate that the class members have suffered the same injury.  This

17   does not mean merely that they have all suffered a violation of the same provision of law."  *Id*. at

18   2551 (citing *General Telephone Co. of Southwest v. Falcon,* 457 U.S. 147, 156 (1982)).  Plaintiffs'

19   claims must depend upon a common contention that, when answered, "will resolve an issue that is

20   central to the validity of each one of the claims in one stroke."  *See id.*

21              "What matters to class certification . . . is not the raising of common
22         'questions'—even in droves—but, rather the capacity of a classwide
           proceeding to generate common *answers* apt to drive the resolution of
23         the litigation.  Dissimilarities within the proposed class are what have
           the potential to impede the generation of common answers."
24
25   *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (citation omitted).  Plaintiffs must

26   offer "significant proof that an employer operated under a general policy" of denying

     compensation for given activities to satisfy Rule 23.  *Falcon*, 457 U.S. at 159 n.15.
27

28

5

United States District Court
Northern District of California

1    With respect to each of the four categories of compensable time at issue, Plaintiffs have

2    demonstrated sufficiently that Defendant effected uniform policies and practices relating to

3    compensation of class members that admitted of no appreciable discretion and that allegedly

4    resulted in systematic, illegal under-compensation.  Specifically, Plaintiffs have identified common

5    questions of law and fact regarding whether Defendant's pay practices and policies violate

6    Industrial Wage Commission Order 9-2001 ("Wage Order No. 9"), Cal. Labor Code § 1194, and

7    the San Francisco Minimum Wage Ordinance, San Francisco Municipal Code § 12R ("SFMWO"),

8    as well as the PAGA claims, which are derivative of the California law claims.  The *gravamen* of

9    Defendant's counterargument on the question of commonality is that for each class member there

10   will be numerous individualized questions of law and fact with respect to each category of time for

11   which Plaintiffs allege class members were either under- or uncompensated.  The Court reviews

12   each.

13   First, as to ***start-end travel time***, Plaintiffs have raised the following question of law and

14   fact that applies to all class members:  whether start-end travel time constitutes compensable work

15   time, and whether Defendant's policy and practice of not compensating Operators for such time

16   runs afoul of Wage Order No. 9, the SFMWO, and Labor Code section 1194.  Resolution of this

17   question will establish the legal right of all members in the class with respect to any start-end travel

18   time they incur.  Plaintiffs have provided significant evidence to show that Defendant maintains a

19   policy pursuant to which Operators are not paid for any start-end travel time, and Defendant has

20   advanced no argument to the contrary.  For example, Judy Bowers, a scheduler in SFMTA's

21   scheduling department, stated that Defendant maintains a policy and practice of not paying

22   Operators for start-end travel time "even though such travel time is an integral part of the principal

23   activities of the Operators, results from Defendant's requirements that Operators end certain routes

24   in locations different from where they started, and compelled by the scheduling arrangements made

25   by Defendants."  (Bowers Dec. ¶ 16; *see also* Antonio Dep. 52:21–62:3; Flynn Dep. at 14:8–20;

26   21:23–23:4.)[3]  Defendant's counterargument that more senior class members can and do opt out of

27   _____

28   [3] Plaintiffs concede that Defendant pays some operators for start-end travel time, but has provided
     evidence to show that these operators comprise a small subset that is readily identifiable.  *See, e.g.,*

routes that require start-end travel time is unpersuasive—it merely begs the fundamental question: whether those members are opting out of taking shifts that would result in improper under-compensation.  (*See* Opp. at 18.)  Thus, as to start-end travel time, the facts alleged and evidence proffered show that resolution of the fundamental, common question will lead to an answer common to all class members.

With respect to the second and third categories, Plaintiffs have provided substantial evidence to show that Defendant has a policy and practice of not compensating Operators for ***turn-in time*** and ***meeting time***, and has raised questions common to all class members:  whether Defendant's practice violates Wage Order No. 9, the SFMWO, and Labor Code section 1194.  (*See* Bowers Dec. ¶ 18; *see also* Antonio Dep. at 17:6–23, 111:12–129:20; 112:18–113:11; 129:13–20.) Defendant does not contest the basic notion that compensation is based on a policy or practice. Rather, Defendant contends that class members will have been affected by the policy differently and will have expended varied amounts of time engaging in turn-in procedures and meetings. (Opp. at 18–19.)  Again, this counterargument overlooks the class-wide nature of the primary question:  whether such time is compensable, and if so, whether Defendant's policy is improper. Answering that question "will connect" the compensation scheme to the "claim for class relief," and thus is suitable for class-wide resolution.  *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011) (citing *Dukes*, 131 S. Ct. at 2551–52).

Finally, as to the last category, ***late runs***, Plaintiffs have raised common questions of fact and law that, when answered as to one class member, will resolve "in one stroke" an issue that is central to the validity of all Operators' claims:  whether Defendants' failure to compensate Operators for late runs constitutes a violation of Wage Order No. 9, Labor Code section 1194, and the SFMWO.  *See Dukes*, 131 S. Ct. at 2551.  Although Defendant contends that it maintains a procedure whereby Operators can submit time cards for unscheduled overtime, Plaintiffs have alleged that Defendant's method for scheduling runs systematically underestimates run times and virtually guarantees that Operators work overtime.  Plaintiffs further contend that Defendant has

---

Drogin Dec. ¶ 14; Antonio Dep. 43:7–12, 61:17–62:3; Del Barrio Dep. 26:13–22; 30:2–5; 34:14–35:9.

1    actual and constructive knowledge of the regularity and extent of unscheduled overtime such that

2    its failure to compensate Operators for such time is knowing and willful, and runs afoul of Wage

3    Order No. 9, Labor Code § 1194, and the SFMWO.  The extent of Defendant's knowledge

4    regarding overtime submission procedures would bear generally on the claims of individual class

5    members.

6           Defendant counters that because each Operator exercises control over his or her start-end

7    travel time, whether the time is compensable, and how much time is compensable, will vary from

8    Operator to Operator.  (Opp. at 18.)  Indeed, Defendant notes that more senior class members

9    selected runs that required no start-end time.  (*Id*.)  Defendant further argues that individual

10   Operators will have incurred different amounts of overtime for late runs and that the reason

11   Operators were not compensated for late runs will be individualized—for example, Defendant

12   points to one instance where an Operator conceded that the reason he did not submit overtime cards

13   was due to "laziness."  (*Id*. at 17.)  Likewise, as to meeting time and turn-in time, Defendant asserts

14   that not all Operators have been subject to such practices, that each Operator's experiences are

15   unique, and that in any event, the record evidence shows that such time is *de minimis*.  (*Id*. at 18–

16   19.)  Finally, Defendant argues that as to all of Plaintiffs' claims, whether the City knew or should

17   have known that individual Operators were working off-the-clock will vary so significantly that

18   such questions can be answered only on an individual basis and are thus not amenable to class-wide

19   resolution.  (*Id*. at 19.)

20          The Court finds Defendant's arguments unavailing.  Although framed as a challenge to the

21   commonality requirement in the Rule 23 analysis, the essence of Defendant's counterarguments

22   focuses on whether Plaintiffs will be able to prove damages as to individual class members to a

23   reasonable degree of certainty and accuracy.  The argument is well taken, however the Court notes

24   that nowhere has Defendant posed any objection to Plaintiffs' expert declaration, which details how

25   such damages could be calculated for all of Plaintiffs' claims on a class-wide basis.  (*See* Drogin

26   Dec. ¶¶ 4–34.)  In his declaration, Dr. Drogin, Plaintiffs' expert, states that "it is my opinion that a

27   combination of calculations made from the available databases, and use of random sampling

28   methods, could be used to make damages estimate in this case."  (*Id*. at ¶ 5.)  In fact, where

United States District Court
Northern District of California

8

1   complete data is available, "an exact calculation for everyone in the class can be made." (*Id.* at ¶

2   15.)  Defendant objected to none of these statements, nor has Defendant objected to the format or

3   existence of the evidence upon which Dr. Drogin states he can rely to calculate such damages.[4]

4   (*See id.* ¶¶ 4–34.)  Defendant's main argument against class certification ignores relevant evidence

5   in the record to the contrary and thus cannot persuade.

6          Regardless, the Court finds that Plaintiffs have demonstrated commonality with respect to

7   both Defendant's common procedures governing compensation of Operators and by "significant

8   proof that [Defendant] operated under a general policy" of not compensating employees for each

9   allegedly compensable category of time.  *Dukes*, 131 S. Ct. at 2553.  Unlike in *Dukes*, the policies

10   and procedures at issue here did not leave the relevant compensation decisions to the discretion of

11   local supervisors.  Rather, Defendant's established and uncontroverted uniform policies and

12   procedures relating to compensation of the Operators affect every member of the proposed class.

13   *See Eddings v. Health Net, Inc.*, 2011 WL 4526675, *1 (C.D. Cal. July 27, 2011) (finding *Dukes*

14   satisfied where "Defendant subjected each of the purported class members to the same timekeeping

15   and rounding policies, and moreover, the legality of those policies represents a common contention

16   that is central to the class members' rounding claims.")  Indeed, Defendant's reliance on the

---

17   [4] Such evidence includes:

18          (1) **Trapeze Scheduling Software**, which is used to create the daily schedules of each run
     throughout the SFMTA system; Trapeze Range Reports, which identify the starting location of the
19   run, the ending location of the run, any relief point, any standby time, and travel time allotted, the
     total time duration from on until off, the estimated time that the Operator is driving the bus or train,
20   the Operator's report time, lunch allowance, and daily pay for the run, taking into account the
     applicable pay rates.  (*Id.* at ¶ 8, 9.)
21          (2) **NextBus/Automatic Vehicle Location** global position system data, which shows when
22   a bus or train pulls into and out of starting and ending locations, various stops, and relief points.
     This data can then be matched to the Trapeze Scheduling Software to reveal any deficits between
23   scheduled time and actual running time of each vehicle operating throughout the SFMTA system.
     (*Id.* at ¶ 10.)
24          (3) **Operators' Personnel Files**, which include records relating to supervisor meetings and
25   runs to which Operators were assigned.  (*Id.* at ¶ 11.)
          (4) **Daily Details**, which record any unscheduled overtime as well as any supervisor
26   meetings.  (*Id.* at ¶ 12.)
27          (5) **Payroll Records** for each Operator, noting which runs each Operator performed and
28   hours worked.  (*Id.* at ¶ 13.)

9

United States District Court
Northern District of California

1    existence of an MOU between Plaintiffs' Transportation Workers' Union and the SFMTA,

2    purportedly to suggest that class members have agreed not to be compensated for the categories of

3    time at issue in this case (*see* Opp. at 4–5), serves to further Plaintiffs' argument that policies and

4    procedures exist and begs the question of whether such policies and procedures are lawful.

5         Thus, as to all categories of time for which Plaintiffs argue Operators have been improperly

6    under-compensated, Plaintiff has established the applicability of common policies and procedures

7    to the instant dispute.  Answers concerning the propriety of such policies will have the result of

8    deciding the legal rights for all members of the class.  The Court finds the commonality

9    requirement in Rule 23(a)(2) has been satisfied.

10        **3.  Typicality**

11        Under Rule 23(a)(3), named plaintiffs must be members of the class they represent and

12   "possess the same interest and suffer the same injury" as absent class members.  *Falcon*, 457 U.S.

13   at 156 (citation omitted).  The named plaintiffs' claims are typical if they are "reasonably co-

14   extensive with those of absent class members; they need not be substantially identical."  *Hanlon v.*

15   *Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).  The test of typicality "is whether other

16   members have the same or similar injury, whether the action is based on conduct which is not

17   unique to the named plaintiffs, and whether other class members have been injured by the same

18   course of conduct."  *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citation

19   omitted).

20        Defendant argues that here, the named plaintiffs' claims are not typical of those of the class.

21   Defendant argues named plaintiffs have "fail[ed] to present evidence demonstrating that the named

22   plaintiffs all experienced the same unlawful practices in the same fashion."  (Opp. at 20.)

23   Defendant further argues that not all named plaintiffs experienced start-end time, turn-in time, or

24   meeting time.[5]  (*Id.*)  The Court finds these arguments unpersuasive.

25        Named plaintiffs' claims do not need to be completely identical in order to be reasonably

26   co-extensive with the claims of absent members.  *See Hanlon*, 150 F.3d at 1020; *Lopez v. G.A.T.*

27

28   _____
     [5] Notably absent from Defendant's argument is any assertion that not all of the named plaintiffs
     experienced routinely late time.  (*See* Opp. at 20.)

1   *Airline Ground Support, Inc.*, 2010 WL 3633177, *7 (S.D. Cal. Sept. 13, 2010).  Although named

2   plaintiffs' claims admit of some divergence and variation, these differences do not eclipse the fact

3   that, collectively, named plaintiffs' claims are representative of the proposed class members.  Each

4   of the named plaintiffs' claims stem from the same allegedly unlawful policies, practices, and

5   procedures.  *See Lopez v. G.A.T. Airline Ground Support, Inc.*, 2010 WL 3633177, *7 (S.D. Cal.

6   Sept. 13, 2010).  Plaintiffs are or were employed by Defendant as Operators during the proposed

7   class period.  Plaintiffs are asserting claims that are collectively representative of the proposed class

8   members' claims, which stem from Defendant's uncontroverted and allegedly improper policies

9   that affect all class members.  Accordingly, named plaintiffs' claims are reasonably coextensive

10   with and typical of the claims of the class.  The Court finds that Plaintiffs have satisfied Rule

11   23(a)(3).

12         **4.   Adequacy**

13         Rule 23(a)(4) insists that to "satisfy constitutional due process concerns, absent class

14   members must be afforded adequate representation before entry of a judgment which binds them."

15   *Hanlon*, 150 F.3d at 1020.  "To determine whether named plaintiffs will adequately represent a

16   class, courts must resolve two questions: (1) do the named plaintiffs and their counsel have any

17   conflicts of interest with other class members and (2) will the named plaintiffs and their counsel

18   prosecute the action vigorously on behalf of the class?"  *Ellis*, 657 F.3d at 985 (citation and

19   quotation marks omitted); *see also* Fed. R. Civ. P. 23(g).

20         Here, Defendant has not questioned the adequacy of the proposed class representatives.

21   Rather, Defendant challenges proposed class counsel.  To support this argument, Defendant notes

22   that Plaintiffs "waited almost eighteen months after filing this action to move for class certification.

23   (Opp. at 21 (citing *East Texas Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 405 (1977)).)

24   In *East Texas*, however, the suggestion of less than adequate legal advocacy was based on the fact

25   that there, class counsel did not move for class certification prior to trial.  *See East Texas*, 431 U.S.

26   at 405.  That is not the case here.  First, this Court notes that a schedule was established for filing

27   the instant motion and subsequent briefing.  (Dkt. No. 121.)  Plaintiffs' motion was timely filed.

28

11

The delay with which Defendant takes issue does not demonstrate lack of diligence or zealousness on the part of proposed class counsel.

Next, Defendant argues that proposed class counsel do not demonstrate the requisite level of experience to litigate this case, ostensibly because the volume of materials provided on the subject of counsels' experience in class action and wage and hour litigation appears too slight to be sufficient. (Opp. at 20–21.)   However, Defendant does not argue that proposed class counsel do not have such experience, or that they have failed to demonstrate competence in this or other matters.

Regardless, the Court's inquiry is directed to whether counsel are (i) "qualified, experienced and generally able to conduct the litigation" and (ii) will "vigorously prosecute the interests of the class." *See* Fed. R. Civ. P. 23(a)(4); 23(g).  These standards are generally met with members of the bar in good standing typically deemed qualified and competent to represent a class absent evidence to the contrary.  NEWBERG ON CLASS ACTIONS § 3:72 (5th ed.)  Here, proposed class counsel are members of the bar in good standing, with experience in employment law, wage and hour law, and class actions.  (*See* Tidrick Dec., Ex. Y).  There is no evidence in the record to suggest they are not adequate class counsel.  Accordingly, the Court finds that proposed class counsel are adequate. [6]

## B.        Predominance under FRCP 23(b)(3)

The Court's final inquiry is whether Plaintiffs' proposed class satisfies Rule 23(b)(3).  Plaintiffs must establish that:   (1)"questions of law or fact common to class members predominate over any questions affecting only individual members" and (2) that a class action would be "superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  Where questions common to class members represent significant issues that can be resolved in a single adjudication, "there is clear justification for handling the dispute on a representative rather than on an individual basis."  *Hanlon*, 150 F.3d at 1022.  The "common" legal

---

[6] Defendant takes issue with the qualifications of certain individuals Plaintiffs have identified as providing litigation consulting services to Plaintiffs' counsel but who have not formally appeared. Because the Court finds that named Plaintiffs' counsel are adequate, it also finds that the decision of whether to engage a litigation consultant and if so, whom, is a decision properly left to Plaintiffs and their counsel.  Accordingly, the Court declines to subject to scrutiny the qualifications of the consultants.

United States District Court
Northern District of California

or factual issues must be of sufficient importance to the case that the Court is convinced that the most efficient, fair and sensible method of adjudication is through a class action.  CAL. PRAC. GUIDE FED. CIV. PRO. BEFORE TRIAL CH. 10-C § 10:274 (citing *Califano*, 442 U.S. at 701).

Accordingly, the Court will address predominance as to each type of Plaintiffs' claims and then turn to the question of whether a class action is superior to other methods for adjudicating the instant controversy.

### 1.  Rule 23(b)(3)1

#### a.  Unpaid Wage Claims

Plaintiffs' claims relating to unpaid wages (meeting time, turn-in time, and start-end time) concern the legality of Defendant's payment practices, and apply to all Operators.  This Defendant has conceded.  For each, the predominant question is whether Defendant's policies and practices not to compensate Operators for such time violate Wage Order No. 9, Labor Code section 1194, and the SFMWO.

Further, Plaintiffs have provided the Court with an explanation of how it intends to prove damages for its unpaid wage claims on a class-wide basis.  Specifically, Plaintiffs state that they intend to rely on the following evidence:  (1) Defendant's payment formula, which omits payment for start-end time, meeting time, and turn-in time; and (2) Defendant's business records, including Range Reports generated by Trapeze software, NextBus AVL GPS data, Operators' personnel files, payroll data, and "daily detail" records.  (*See* Mot. at 21 (citing Drogin Dec. ¶¶ 14–34).)

Individual issues alone do not overcome the weight of these common questions, nor does Defendant persuasively demonstrate that they will impede determination of the central issues in this case.  Defendant concedes that "what constitutes compensable 'work' is at the heart of this dispute."  (*See* Opp. at 12.)  Nonetheless, Defendant argues that individual inquiries will dominate the resolution of Plaintiffs' claims.  (Opp. at 21–22.)  The Court disagrees.

Not surprisingly, class members might have been affected by Defendant's allegedly illegal policies to different degrees—Plaintiffs do not assert otherwise.  But that fact alone does not overcome the predominant nature of the central question:  *whether time for which Defendant does not pay its Operators is compensable*.  "The amount of damages is invariably an individual

United States District Court
Northern District of California

question and does not defeat class action treatment." *See Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975) (citation omitted); *Leyva c. Medline*, 716 F.3d 510, 513–14 (9th Cir. 2013) (noting that "damages determinations are individual in nearly all wage-and-hour class actions" and finding that this does not defeat class action certification) (citation omitted).  Particularly where, as here, the claims at issue concern the legitimacy of Defendant's compensation system, rather than the actions of individual Operators, class certification is appropriate. *See Ortega v. J.B. Hunt Transport, Inc.*, 258 F.R.D. 361, 367 (C.D. Cal. 2009) (finding question regarding legality of defendant's compensation system suitable for class-wide resolution where defendant argued that class members' individual experiences with meal and rest breaks predominated the legal inquiry) (citation omitted).

The Court finds that the "common" legal or factual issues are of sufficient importance to the case such that the most efficient, fair, and sensible method of adjudication is through a class action.

### b.  Routinely Late Time

Plaintiffs allege that Defendant maintains a policy and practice whereby Operators are paid for a predetermined amount of driving time by using estimates generated by scheduling software that consistently and systematically underestimates driving time.  (*See* Mot. at 3, 9–13.)  The result, according to Plaintiffs, is that buses and trains routinely arrive at their final destinations later than the scheduled time.  (*See* Tidrick Dec., Ex. E (declarations from 117 Operators).)  Plaintiffs further assert that Operators are not paid for Routinely Late Time despite the fact that Defendant has constructive and actual knowledge of when such unscheduled work occurs.  (Mot. at 9.)  Plaintiffs contend that Defendant has such knowledge because: (1) Defendant has personnel at a central command post who monitor vehicle locations using NextBus/Automatic Vehicle Location ("NextBus AVL") global position system ("GPS") devices that Defendant has installed on all vehicles; and (2) Defendant tracks and reports so-called "on-time performance" statistics for all its vehicles, which have put Defendant on notice that vehicles routinely arrive several minutes after scheduled arrival times.  (*Id*. at 9–10, citations omitted.)

Defendant concedes that Operators occasionally work unscheduled overtime and claims that such overtime can result from a variety of factors such as traffic congestion, accidents or police

United States District Court
Northern District of California

14

1  incidents, demonstrations, routing changes or planned events such as street fairs.  (Opp. at 8; Del

2  Barrio Dec. ¶ 11; Antonio Dec. ¶ 13).)  Defendant does not dispute that its buses and trains are

3  equipped with GPS devices or that Defendant tracks and reports on performance statistics for all of

4  its vehicles.  (*See* Mot. at 9–10.)  Rather, Defendant argues that claims for unpaid overtime are

5  necessarily individualized, as there is no corporate policy requiring "off-the-clock" work; to the

6  contrary, Defendant maintains a policy and procedure whereby Operators can submit forms for

7  compensation for overtime work.  (*See* Opp. at 8–9, 17, 22 (describing overtime card policy and

8  procedures, summarizing evidence establishing that Plaintiffs could be paid for overtime work if

9  cards were properly submitted).)  Defendant argues that because Plaintiffs' claims allegedly rest on

10  discrete decisions by individual actors rather than an overarching policy, common issues of law or

11  fact do not predominate.  (*Id.*)

12  Defendant is correct that overtime claims may present a number of individualized questions,

13  including the circumstances surrounding why individual employees worked off-the-clock.  (Opp. at

14  17.)  *See, e.g.*, *Washington v. Joe's Crab Shack*, 271 F.R.D. 629, 642 (N.D. Cal. 2010) ("Plaintiff

15  has provided no evidence of any company-wide or class-wide policy of requiring 'off-the-clock'

16  work, and the individualized assessment necessary to ascertain whether there were in fact any

17  employees who were told to work 'off-the-clock' would not be susceptible to common proof.").

18  Nonetheless, courts have certified classes and allowed collective actions to proceed notwithstanding

19  such circumstances.

20  Generally, the more narrowly defined the class, and the more evidence of a controlling

21  company-wide policy, the more appropriate a case is for class certification.  *Jimenez v. Allstate Ins.*

22  *Co.*, 2012 WL 1366052, *19 (C.D. Cal. Apr. 18, 2012) (comparing *Washington*, 271 F.R.D. 629

23  (deciding that common questions did not predominate in a class composed of different types of

24  employees with different job functions when there was no evidence of a company-wide policy that

25  interfered with overtime reporting); *Brinker Restaurant Corp. v. Superior Court*, 53 Cal. 4th 1004,

26  1051 (Cal. 2012) (noting that, for the employee's off-the-clock claim, "neither a common policy

27  nor a common method of proof is apparent" because there was not "substantial evidence of a

28  systematic company policy to pressure or require employees to work off the clock"); *and Koike v.*

15

*Starbucks Corp.*, 2008 WL 7796650 (N.D. Cal. June 20, 2008) *with Mahoney v. Farmers Ins. Exch.*, 2011 WL 4458513 (S.D. Tx. Sept. 21, 2011) (declining to decertify a collective action where adjusters claimed that overtime reporting procedures and corporate "frowning on" overtime caused off-the-clock work) *and Ugas v. H & R Block Enters., LLC*, 2011 WL 3439219, *9 (C.D. Cal. Aug. 4, 2011) ("[P]laintiffs have offered sufficient evidence that they may be able to show that defendants pursue an unwritten policy to improperly withhold overtime wages from class members in this district.")).

Here, class-wide questions relating to late time include whether: (1) Defendant has constructive knowledge that its Operators work routinely late time; (2) Defendant's scheduling policies systematically subject Operators to incur routinely late time; (3) Defendant has actual or constructive knowledge that its policies and practices require its Operators to work routinely late time; (4) Defendant has actual or constructive knowledge that Operators who work routinely late time are not compensated for such time; and (5) whether Defendant's policies and procedures relating to submission of overtime cards amount to a "policy to violate the policy." Plaintiffs have proffered evidence to suggest that Defendant does have actual and constructive knowledge that its scheduling policies and practices subject its Operators to routinely late time, that Defendant has actual and constructive knowledge that routinely late time goes uncompensated, and that Defendant's overtime procedures discourage submission of completed overtime cards.[7] Moreover, whether and to what extent Defendant's overtime card submission policy mitigates Defendant's potential liability for failing to pay Operators for late runs is a class-wide question that

---

[7] Such evidence includes, but is not limited to the fact that Defendant monitors vehicle locations using NextBus/Automatic Vehicle Location global position system devices that Defendant has installed on all vehicles, which suggests that Defendant knows which Operators incur late time and how much late time they incur, and Defendant tracks and reports on-time performance statistics for all its vehicles and therefore is allegedly on notice that vehicles routinely arrive several minutes after scheduled arrival times. (Lee Dep. at 11:3–13:7; 16:19–17:17; Bowers Dec. ¶6(e).) In addition, Plaintiffs have supplied evidence to suggest that Defendant is aware of Operators performing unscheduled work and not submitting unscheduled overtime cards for that time, but has failed to take action to ensure that Operators are compensated for that time. *See e.g.*, Del Barrio Dep. at 45:7–47:10; 59:22–68:2; 75:14–76:20; Antonio Dep. Ex. 18 (Trapeze Audit), at 10–11; Dennis Dep. at 7:24–10:9 (discussing GPS data); Lee Dep. at 11:5–13:7; 16:19–17:17 (discussing on-time performance data); Antonio Dep. at 104:16–23 (same).

predominates over any individual questions.

Thus, as to all categories of time for which Plaintiffs allege Defendant has improperly failed to compensate Operators, the Court finds that common questions predominate as to Plaintiffs' claims concerning Labor Code section 1194, the SFMWO, and Wage Order No. 9, and that the most efficient, fair and sensible method of adjudication is through a class action.

### 2. Superiority

To certify a Rule 23(b)(3) class action, Plaintiffs must show that a class action is superior to individual suits. To make this determination, the Court considers the following four non-exhaustive factors: (1) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against the members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. Fed. R. Civ. P. 23(b)(3)(A)–(D).

First Factor: The Court finds that the first factor weighs heavily in favor of certification. A class action is the superior method of adjudication where "few potential class members could afford to undertake individual litigation against [Defendant] to recover the relatively modest damages at issue. Therefore, in the absence of a class action, few class members would have any meaningful redress against [Defendant] as a practical matter." *Chamberlan v. Ford Motor Co.*, 223 F.R.D. 524, 527 (N.D. Cal. 2004). Given that individual Operators' anticipated recovery is likely to be relatively small, the Court finds it unlikely that individual Operators would be able retain counsel to pursue these claims.

Second Factor: Neither Plaintiffs' nor Defendant's counsel has represented that there exist other, individually filed actions alleging the same claims that are at issue in this case. This suggests that each class member's potential damages recovery does not "provide the incentive for any individual to bring a solo action prosecuting his or her rights." *See Amchem Prods.*, 521 U.S. at 617.

Third Factor: Each class member's claims are based on the alleged illegality of Defendant's general policies and practices. The prospect that all 2,000 Operators would file individual actions

1    promises redundant proceedings and wildly inefficient use of limited judicial resources.  Moreover,

2    the likelihood that Defendant would reform its allegedly illegal practices if individual defendants

3    were required to bring their own lawsuits is infinitesimal.  As discussed above, the relatively

4    modest recovery due to individual operators would preclude many from being able to find counsel

5    to bring suit.  The only practical way adjudicating the legality of Defendant's pay policies and

6    practices is through a class action.

7        Fourth Factor:  The Court finds that adjudication of this case as a class action would not

8    present any insurmountable case management problems and, in fact, would serve the interests of

9    judicial efficiency.  Given that Plaintiffs seek to represent a readily identifiable class and common

10   questions of law and fact predominate, certification will not generate any complexities from a case

11   management perspective.  Further, the Court is satisfied that proving damages will not pose an

12   insurmountable or overly complex task.  The expert declaration of Dr. Drogin demonstrates

13   specifically how the class members' claims can be proven on a class-wide basis.  *See* Drogin Decl.,

14   ¶¶ 4–34.  Defendant's suggestion that a class action will pose case management issues because this

15   case presents both federal and state claims is unpersuasive.  (*Compare* Opp. at 23 *with Gomez v.*

16   *Rossi Concrete, Inc.*, 270 F.R.D. 579, 587 (S.D. Cal. 2010) ("consolidati[on of] the state claims

17   with the federal claims would be much more efficient . . . than litigating the same overtime issues in

18   both state and federal court [as it would] save judicial and litigant resource to litigate them all

19   here."); *Wang v. Chinese Daily News, Inc.*, 623 F.3d 743, 761 (9th Cir. 2010) (affirming "in all

20   respects" the court's judgment in case certified both as FLSA collective action and as Rule 23 class

21   action), *overruled on other grounds*, *Dallas County v. Texas Democratic Party,* 132 S. Ct. 74

22   (2011).  The simultaneous resolution of Plaintiffs' FLSA and state law claims will serve the interest

23   of judicial efficiency and economy.

24   **C. Hoffman-La Roche Notice for Conditional Collective Action Certification**

25        **1. Tier I Certification**

26        The FLSA provides for a collective action where the complaining employees are "similarly

27   situated."  29 U.S.C. § 216(b).  District courts in the Ninth Circuit have used an *ad hoc*, two-tiered

28   approach in determining whether class members are similarly situated.  *See Gerlach v. Wells Fargo*

1    & Co., 2006 WL 824652, *2 (N.D. Cal. Mar. 28, 2006) (citations omitted).  Using this approach,

2    the district court makes an initial "notice stage" determination of whether plaintiffs are similarly

3    situated based on substantial allegations, supported by declarations or discovery, that the putative

4    plaintiffs "were together the victims of a single decision, policy, or plan." *Thiessen v. General*

5    *Electric Capital Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001).  If the plaintiffs meet their burden, a

6    district court may authorize the distribution of a notice to similarly situated potential plaintiffs.  *Id*.

7    A second determination is made at the conclusion of discovery utilizing a stricter standard for

8    "similarly situated," taking into consideration a variety of other factors.  *Id*. at 1102–03.  Defendant

9    asks that this Court apply the stricter standard because Plaintiffs brought their motion for

10   conditional certification after the case had been pending for a considerable length of time.  The

11   Court declines to do so.  "To apply the second-tier heightened review at this stage would be

12   contrary to the broad remedial policies underlying the FLSA."  *See Gerlach*, 2006 WL 824652, at

13   *3 (noting that in *Thiessen*, 267 F.3d 1095, it was only at the conclusion of discovery that the court

14   applied the second-tier standard and declining to impose the heightened second-tier standard until

15   after discovery was complete and Defendants moved for decertification.)

16        Applying the first-tier standard, the Court finds that conditional certification is appropriate

17   here.  Plaintiffs have established "substantial allegations that the putative class members were

18   together the victims of a single decision, policy, or plan." *Thiessen*, 267 F.3d at 1102 (internal

19   quotations and citations omitted).  As set forth above, Plaintiffs have proffered evidence that

20   members of the proposed class were subject to Defendant's policies concerning non-compensation

21   for start-end travel time, meeting time, and turn-in time.  Moreover, Plaintiffs have provided

22   evidence to suggest that Defendant's policy and practice for determining run schedules

23   systematically underestimates actual driving time such that unauthorized overtime for each

24   Operator is virtually guaranteed, and that Defendant's failure to compensate Operators for such

25   time is knowing and willful.  With regard to Plaintiffs' Motion for Approval of *Hoffmann-La Roche*

26   Notice, for the reasons stated above, the Court finds that the Operators are similarly situated.  *See,*

27   *e.g., supra*, Section III(A)(2).

28

United States District Court
Northern District of California

19

1    Accordingly, this Court conditionally certifies the collective action for the purpose of

2 sending notice of the action to potentially similarly situated employees.  If, after discovery is

3 complete, Defendants move for decertification, the Court will apply the heightened second-tier

4 review.

5                    **2.  Equitable Tolling**

6    Plaintiffs request that the statute of limitations for individual plaintiffs to opt-in to the FLSA

7 collective action be equitably tolled because Defendant twice refused to provide a list of names and

8 contact information for potential members:  first, on July 16, 2012, when Plaintiffs requested this

9 information in their complaint; second, on January 4, 2013, when Plaintiffs requested this

10 information in a letter sent to Defendant's counsel.  Plaintiffs argue that potential members have

11 not been provided an opportunity to join the action due to Defendant's refusal to provide this

12 information, and that therefore the statute of limitations should be tolled as of either the date the

13 complaint was filed or the date of Plaintiffs' letter request.

14    Defendant argues that equitable tolling is not warranted for two reasons.  First, Defendant

15 reads the Ninth Circuit's decision in *Partlow v. Jewish Orphans' Home of Southern California,*

16 *Inc.*, 645 F.2d 757 (9th Cir. 1981) as permitting equitable tolling in the FLSA context only in the

17 event of attorney error.  Second, Defendant argues that it was not free to disclose the list of

18 potential plaintiffs upon Plaintiffs' requests due to privacy concerns.

19    As an initial matter, the Court is not convinced that *Partlow* limits the application of the

20 equitable tolling doctrine to only instances of attorney error.  Courts have disagreed over whether

21 *Partlow* stands for the proposition that in the FLSA context, equitable tolling is only permissible

22 where there has been attorney error, or whether *Partlow* allows for the application of equitable

23 tolling generally for FLSA claims.  *Compare Adams v. Inter-Con Security Sys.*, 242 F.R.D. 530,

24 542–43 (N.D. Cal. 2007) (permitting equitable tolling in FLSA case where defendant refused to

25 supply contact information for potential plaintiffs because defendant's conduct postponed opting

26 in) (citations omitted) *and Owens v. Bethlehem Mines Corp.*, 630 F. Supp. 309, 312–13

27 (S.D.W.Va.1986) (interpreting *Partlow* to permit equitably tolling the statute of limitations because

28 of a judicial delay), *with Gerlach v. Wells Fargo & Co.*, 2006 WL 824652 (N.D. Cal. Mar. 28,

United States District Court
Northern District of California

20

2006) (rejecting *Owens* and reading *Partlow* narrowly).  The Court finds, as Judge Patel did in *Adams*, that *Partlow* provides neither express nor policy reasons for limiting the equitable tolling doctrine to instances where potential plaintiffs were harmed by counsels' errors.  *See Adams*, 242 F.R.D. at 543 (citing *Partlow*, 645 F.2d at 760–61).  The Court is further convinced that the equitable tolling doctrine is not as limited in the FLSA context as Defendant claims based on the Supreme Court's suggestion that equitable tolling is properly applied to cases involving either defendants inducing delayed filings or faultless plaintiffs.  *See id.* (citing *Irwin v. Dept. of Veterans Affairs*, 498 U.S. 89, 96(1990)).

Thus, when considering whether to permit equitable tolling in the FLSA context, a court may appropriately consider more than simply attorney error.  However, such relief is extended sparingly and only where claimants exercise diligence in preserving their legal rights.  *See Adams*, 242 F.R.D. at 542–43 (N.D. Cal. 2007) (citing *Irwin*, 498 U.S. at 96 (citation omitted)).  Prior applications of equitable tolling illustrate that the inquiry should focus on fairness to both parties. *See Adams*, 242 F.R.D. at 542–43 (citing *Irwin*, 498 U.S. at 96; *Partlow*, 645 F.2d at 760–61 (9th Cir. 1981)).  Courts may equitably toll the statute of limitations "when the plaintiff is prevented from asserting a claim by wrongful conduct on the part of the defendant, or when extraordinary circumstances beyond the plaintiff's control made it impossible to file a claim on time."  *Centurioni v. City & Cnty. of San Francisco*, 2008 WL 295096, *3 (N.D. Cal. Feb. 1, 2008) (citing *Stoll v. Runyon*, 165 F.3d 1238, 1242 (9th Cir. 1999)).

Here, Plaintiffs have failed to show that equitable tolling is warranted.  First, although Plaintiffs argue that potential plaintiffs have been unaware of their right to join the FLSA collective action, they neglect to address the fact that these individuals could have brought separate FLSA actions within their respective limitations periods.  Plaintiffs have offered neither evidence nor argument to show that there were circumstances beyond potential plaintiffs' control that made it impossible for them to file FLSA claims in a timely manner.

Second, while Plaintiffs argue that they twice asked Defendant to produce a list of potential plaintiffs, they have not attempted to show that Defendant's refusal to provide that list was in fact wrongful conduct.  Defendant contends it was not free to disclose personal contact information for

thousands of former employees upon mere written request. Plaintiffs have not challenged this contention. Thus, Plaintiffs have not established that the equities tip in favor of tolling the statute of limitations.

Moreover, if Defendant was barred from disclosing this information, it would have required an order of this Court in order to overcome that prohibition. The Court notes that the standard for conditional certification in the FLSA context is sufficiently permissive to enable plaintiffs to bring motions early on in the litigation in order to obtain such orders. "For conditional certification at this notice stage, the court requires little more than substantial allegations, supported by declarations or discovery, that 'the putative class members were together the victims of a single decision, policy, or plan.'" *Gerlach*, 2006 WL at *2 (citation omitted). The standard for certification at this stage is a lenient one that typically results in certification. *Id*. (citation omitted). Thus, any lost opportunity for potential plaintiffs to join in this action falls on Plaintiffs for their delay in seeking conditional certification of this collective action until a year and a half after their complaint was first filed.

**IV.** **CONCLUSION**

For the foregoing reasons, it is hereby **ORDERED** that:

1.    The Court **GRANTS** Plaintiffs' Motion for Class Certification and Plaintiffs' Motion for Approval of *Hoffman-La Roche* Notice.

2.    The following defined class is certified pursuant to subsections (a) and (b)(3) of Rule 23 of the Federal Rules of Civil Procedure with respect to the Second, Third, and Fourth Causes of Action of the Second Amended Complaint (Dkt. No. 69):

> All individuals who are currently employed, or formerly have been employed, by the San Francisco Municipal Transportation Agency and/or the City and County of San Francisco as a bus or train operator or in an equivalent position (Classification 9163) at any time on or after July 16, 2009. Excluded from the Class are anyone employed by counsel for Plaintiffs in this action, and any Judge to whom this action is assigned and his or her immediate family members.

3.    Plaintiffs Darryl A. Stitt, Tony Grandberry, and Hedy Griffin are appointed as

United States District Court
Northern District of California

representatives of the class.

    4.     The Tidrick Law Firm is appointed as class counsel.

    5.     With respect to the First Cause of Action, the Court conditionally certifies this action as a representative collective action, 29 U.S.C. § 216(b).

    6.     In order to effectuate notice pursuant to Rule 23 and pursuant to *Hoffman-La Roche*, the Court orders Defendant to produce to Plaintiffs' counsel the names, addresses, and telephone numbers of all members of the class as defined above.  Such information shall be produced within ten (10) days of the date of this Order in Microsoft Excel format; and the same shall be produced to Plaintiffs' counsel for any subsequently hired Operators within ten (10) days of the first date of employment;

    7.     The parties shall meet and confer regarding any revisions to Plaintiffs' proposed notice forms attached to the Tidrick Declaration.  No later than **May 16, 2014**, the parties shall provide to the Court their Joint Proposed Notice Forms, along with a proposed order setting forth stipulated deadlines for Operators to respond to the notices and procedures in the event that notices are returned as undeliverable.

    IT IS SO ORDERED.

Date: May 2, 2014

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

United States District Court
Northern District of California

23